LOREN DAY v. EDWARD COLE° ET AL., AND LUMAN JEN-ISON v. EDWARD H. LEONARD ET AL.

[See 65 Mich. 129.]

*Petition for leave to file bill of review—Evidence—Laches.*

After final decree in this case in the Supreme Court, Marland R. Gardner and Eloise A. Dodge, two of the defendants in the original and cross-bills, filed a petition for leave to file a bill in the nature of a bill of review in the circuit court for the county of Ottawa, in chancery, which was denied, the Court holding the petitioners guilty of inexcusable laches, and that the decree sought to be modified must stand and be enforced.

Argued January 15, 1889.   Decided January 25, 1889.

Petition for leave to file bill in the nature of a bill of review.   Denied.   The facts are stated in the opinion.

*Frank L. Dodge (J. C. FitzGerald,* of counsel), for petitioners:

Fraud is an extrinsic, collateral act, which vitiates the most solemn proceedings of courts of justice: *Duchess of Kingston's Case,* 2 Smith, Lead. Cas. 573–578; *Patch v. Ward,* L. R. 3 Ch. App. 203, 206.
· The most odious of all frauds is a fraud practiced upon a court of justice under the forms of law: *Galatian v. Erwin,* Hopk. Ch. 48, 54.

The fraud charged upon Jordan is actual fraud, the misleading of the defeated parties by the artifice and deception of their opponent, thus bringing it within the class of cases of fraud in which courts of equity generally grant relief against decrees and judgments: *Gray v. Barton,* 62 Mich. 186.

In the English high court of chancery the general practice is to file an original bill to impeach a decree obtained by fraud, and this may be done without leave of the court: 2 Dan. Ch. Pr. 1584; *Loyd v. Mansell,* 2 P. Wms. 73, 75; *Flower v. Lloyd,* L. R. 6 Ch. Div. 297, 299; *Sheldon v. Fortescue,* 3 P. Wms. 104, 111; Story Eq. Pl. § 426.

The same rule appears to prevail in the American courts: *Loomer v. Wheelwright,* 3 Sandf. Ch. 135–151; *Terry v. Com. Bank of Alabama,* 92 U. S. 454, 456; *Wright v. Miller,* 8 N. Y. 9, 27; *State v. Phœnix Bank,* 33 Id. 9, 25; *Elliott v. Balcom,* 11 Gray, 286.

In this State the practice is settled that such a bill is proper practice: *Campau v. VanDyke,* 15 Mich. 371; *Adair v. Cummin,* 48 Id. 375, 382.

As to necessity of applying to this Court for leave to file such a bill, see *Ryerson v. Eldred,* 18 Mich. 490, 492.

*N. A. Fletcher* and *H. H. Barlow,* for respondents.

MORSE, J. On the fifteenth day of February, 1887, a final decree on appeal from the circuit court for the county of Ottawa, in chancery, was entered in this Court in the case of *Day v. Cole* and *Jenison v. Leonard.*

The opinion upon which the decree was based will be found reported in 65 Mich. 129, and contains a summary of the claims of the respective parties in the suits.

By that decree the equitable title to the lands in controversy was found to be in one of the defendants, Orleans L. Jordan. Day, upon the payment of a certain sum to him for taxes and interest, was ordered to convey his interest in the lands to Jordan, and the other defendants were declared to have no interest in the premises.

On the twenty-fourth day of September, 1887, Orleans L. Jordan died in possession of these lands, leaving surviving him his widow, Lucy M. Jordan, and an only child, Arthur

W. Jordan.    Jordan left a will, which was duly probated October 31, 1887.    In this will he bequeathed certain property in lieu of dower to his widow, and the balance of his estate to his son, and they are the executrix and executor of said will.

The petitioners, who are two of the heirs at law of Ransom Gardner, deceased, on the twenty-third day of October, 1888, over a year after the death of Orleans L. Jordan, and 20 months after the final decree in this Court, applied to this Court for leave to file a bill of complaint in the Ottawa circuit court in chancery.

It will be remembered that Jordan, in the case of *Day v. Cole,* in which he was one of the defendants, claimed title to the lands as four-fifteenths owner of the vendors' interest, and as sole owner of the vendee's interest, in certain contracts for the sale of the lands involved in that suit.    The Blendon Lumber Company held the title to some of these lands, and they contracted with Edward Cole to sell them to him.    Cole also held a contract for the purchase of other lands, which contract he assigned to the Blendon Lumber Company as security for the faithful performance of his agreement with said company.    Cole also held a contract for the purchase of another lot of lands from Turner and Bostwick.    This contract was also assigned by him and one Pearsons, to whom he had before that assigned, to the Blendon Lumber Company as additional security for the performance of Cole's contract with them.

August 29, 1867, Cole assigned his interest in all three of these contracts to Ransom Gardner, of Kalamazoo, the father of these petitioners.

Jordan claimed Cole's interest in these contracts on the ground that Gardner assigned one-half interest in the same to one Wells, who was his partner in business, and that such interest thereby became partnership property.    After Gardner's death, Wells, as surviving partner, assigned the con-

tracts to Jordan. The Gardner heirs, in the same suit, by Jordan as their solicitor, claimed title to the contracts in Gardner & Wells (the firm being A. G. Wells & Co.), and that they, as the heirs at law of Gardner, were entitled to one-half of Cole's interest in the contracts, subject to the equities of Wells as surviving partner of the firm of A. G. Wells & Co.

The chief contention in the case of *Day v. Cole* was that Gardner, before his death, and prior to the transfer of his one-half interest to Wells, re-assigned this contract to Cole. Jordan claimed the instrument purporting to assign the contract back to Cole was a forgery, which claim was sustained by this Court. We also found the title to this contract to be wholly in Jordan, to the exclusion of the Gardner heirs.

The petitioners now claim that this last result was brought about by the fraud of Jordan.

They allege, in substance, that the original bill was filed by Loren Day, September 12, 1881; that Jordan answered October 25, 1881, setting up his interest as hereinbefore stated; that Luman Jenison filed his cross-bill June 29, 1882, after having answered Day's bill. October 10, 1882, Jordan filed his answer to Jenison's bill, in which answer he reiterated his claim to the lands as before. These cases went to hearing upon pleadings and proofs in the Ottawa circuit court in chancery, June 27, 1883, the heirs of Gardner not being made parties to the controversy in either suit.

February 5, 1884, the court above named, on its own motion, entered an order in the cause that said Gardner heirs should be made parties to both the original and cross bills.

February 23, 1884, Day filed a supplemental bill, making the petitioners, Olivia A. Gardner, the widow of Ransom Gardner, and Emma E. Underwood, his daughter, then living, and William H. Dodge, Marland R. Gardner, and John C. Davis, as administrators of Ransom Gardner's estate,

defendants thereto; and on the same day Luman Jenison filed a supplemental cross-bill, also making them parties defendant thereto.

On the twenty-fifth day of March, 1884, Orleans L. Jordan entered his appearance as solicitor for all these newly made defendants to both bills.

May 22, 1884, the joint and several answer of all of them was filed to the supplemental cross-bill of Jenison by Jordan as their solicitor, in which it was, among other things, alleged that Gardner, in his life-time, sold and transferred to Allen G. Wells (who was then his partner in business) an undivided one-half interest in said lands and contracts, and that an undivided half interest was then the property of said defendants, subject to the equities of Wells therein as surviving member of the copartnership, and also subject to the equities of Jordan as assignee of Wells.

June 5, 1884, the joint and several answer of Eloise A. Dodge, Emma E. Underwood, and John C. Davis, one of Gardner's administrators, was filed to the supplemental bill of Day, said answer being prepared by said Jordan. No answer was prepared or filed for Olivia A. Gardner, or William H. Dodge and Marland R. Gardner, the other administrators. A separate answer was filed by the petitioner Marland R. Gardner, April 29, 1885.

The supplemental bill of Day was taken as confessed against those not answering, June 25, 1884.

Additional testimony was taken, and the cause finally submitted in the fall of 1885. November 3, 1885, the circuit court for the county of Ottawa, in chancery, decreed that Luman Jenison was the owner of the said contracts, and the lands described therein, subject only to the amount due and unpaid on the same to the Blendon Lumber Company or their assigns.

Orleans L. Jordan, Emma E. Underwood, and the petitioner Marland R. Gardner appealed to this Court, with the

result heretofore stated. None of the other defendants appealed. The petition sets out the decree in this Court, and alleges that this decree in favor of Jordan, as against the Gardner heirs, was obtained by the fraud of Jordan.

The charge of fraud stated in the petition is substantially this: That at the time of Ransom Gardner's death, and for many years before, Jordan had been his attorney and confidential legal adviser, and knew the facts and circumstances relating to these contracts, and. who was the equitable owner thereof; that he and Wells represented to the Gardner heirs that the estate of Gardner had no interest in said lands, and also to his administrators, which statements they believed to be true; that they therefore paid no attention to the suits, until Jordan informed them that an order had been made that they should be made parties defendant therein. He requested permission to appear for them as their solicitor, stating that it was possible that it might turn out that they had some interest in the lands, and that he would, as their solicitor, carefully guard their interests, and secure their rights in the premises; that he knew all about the facts, and they need not pay any attention to the suits, as he could do everything that was necessary and proper to secure and protect their rights and interest in the lands.

Relying on these statements, and having faith in his integrity, they acceded to his request. He appeared for them, and prepared the answers as before stated. He stated to the petitioners, and they aver, on information and belief, that he made the same statement to the others, that the several answers signed by them were proper to be subscribed by them, and sufficient to protect all their rights, and that, relying on his integrity, they signed such answers; that Jordan took and had sole and exclusive management of the defense of the petitioners, and the others interested in the Gardner estate; and that the petitioners and Olivia A. Gardner and Emma E. Underwood took no part in the same, save

to sign such papers as Jordan presented to them, and trusted and relied upon him to produce the evidence, and to argue and present the equities before the court, in such manner as to preserve and secure their rights.

They charge that Jordan concealed and kept from them that he was defending the suit for his own individual benefit, or that he had, or claimed to have, any interest therein adverse to their interest, and concealed from them the fact that there was in fact no assignment of said contracts, or of any rights or equities therein, ever made by said Ransom Gardner to said Allen G. Wells, and that, at the time of his death, Ransom Gardner was in truth the sole and only owner thereof; that Jordan well knew that, at the time he procured his assignment from Wells, Wells had no interest therein, and that the whole title was in Gardner; that he kept the Gardner heirs in ignorance of this fact that he might defraud them; that at first he endeavored to keep from them any notice or knowledge of the proceedings; and, when the court ordered that they should be made parties, still seeking to defraud them so that he might appropriate the whole of said lands to his benefit, he made use of their trust and confidence to obtain control of the entire case, and so managed and manipulated the defense as to make it appear to the court that they had no interest in the contracts, while pretending to act for them.

They further claim in the petition that Jordan did not take or cause to be taken any testimony whatever tending to show or support the just interests or rights of the Gardner heirs, and charge that he himself knew, and had abundant evidence within his knowledge tending to show, that at the time of his death Gardner was the owner of these contracts; that on the argument in both courts Jordan fraudulently obscured and kept from the notice of the courts the rightful claims of the Gardner heirs, and contended that he was the sole owner of the contracts in his own individual right.

They allege that they can establish the fact to be that Gardner, at his death, was the sole owner of the contracts and of the lands, subject only to the amount due thereon, if any, to the Blendon Lumber Company, or their representatives or assigns.

They claim the decree should be modified and altered so as to conform to the allegations of the petition that the heirs of Ransom Gardner are the owners of these lands, instead of Jordan; and ask leave to file their bill of complaint in the circuit court for the county of Ottawa in chancery, as complainants, against the said Lucy M. Jordan, executrix, and Arthur W. Jordan, executor, of the last will and testament of the said Orleans L. Jordan, deceased, and the said Lucy M. Jordan and Arthur W. Jordan, and also making parties thereto the said Olivia A. Gardner, widow of said Ransom Gardner, and the said Hugh Underwood and Warren Underwood, children and heirs at law of said Emma E. Underwood, deceased, and such other person or persons, if any there be, whom your petitioners shall be advised may be proper parties thereto, for the purpose of obtaining a decree modifying the said decree of this Court in the manner hereinfore mentioned and set forth.

The petitioners present no evidence to this Court, documentary or otherwise, to support their claim, save the petition, which is sworn to by each of them, and the testimony in the record of *Day v. Cole,* to which we are referred.

We ought not to grant the prayer of this petition without we have some reason to believe that the charges and facts therein alleged can be sustained by competent proof. The litigation involving these lands commenced in 1881, and continued for six years, at great expense to the parties litigant.

Since it commenced, Wells has died, and Jordan lived but eight months after its supposed final termination in this Court. The oath of none of the Gardner heirs, including these petitioners, can be taken, against the heirs of Jordan,

to any matter equally within the knowledge of Jordan or Wells.

There is hardly an allegation in the petition, if there is any, of benefit to the petitioners in their claim, that either one of them could support by their own testimony, under the statute, if they should be allowed to file a bill as they pray.

The matter was delayed for 20 months after the decree of this Court, and in the meantime the man whose integrity as an attorney and a citizen is attacked is dead. He is accused of the blackest fraud and perjury, which he cannot answer in this world; and the facts, which they admit were chiefly within his knowledge, and not theirs, can never be known, as they ought to be known in order to overthrow the decree of this Court. The charges can be lightly made, but the evidence to establish them must be such as will satisfy a court or jury that a great fraud and crime has been committed.

The petitioners name no witnesses, nor do they state any facts as capable of proof beyond their own oaths. Outside of their own statements, much of them on information and belief, they offer us no proof, and show no sources from which testimony can be procured, affecting the honesty, fair dealing, and good faith of Orleans L. Jordan. The facts within their knowledge, affecting his integrity as their solicitor, must, in the very nature of things, have been equally within his knowledge. Neither of them would be permitted to testify what Jordan said or represented to them, or any other of the Gardner heirs. It is not shown that any of the alleged false representations of Jordan, upon which they mainly rely to establish their case, can be proved by any one not precluded from testifying by the statute, and it is not likely that they could be so proved.

Why this delay until after Jordan's death, and the subsequent laches in making the petition?

Is it satisfactorily explained? We think not. In the first place the petitioner Eloise A. Dodge did not appeal to this

Court from the decree in the court below.   She has slept
upon her rights since November 3, 1885.   Her husband, William H. Dodge, and John C. Davis, two of Gardner's administrators, and the widow, did not appeal.   It would look as if
they regarded the rights of Gardner in the premises not
worth contending for any further at that time.   No excuse
is offered in the petition for this failure to appeal, nor is any
reason given why the widow does not join in this petition.
It is alleged, however, that Emma E. Underwood died before
the decree of this Court, in February, 1887, leaving infant
children, and that no administration has been taken on her
estate, and that the administrators were discharged by the probate court of Kalamazoo county, December 14, 1880, leaving
the petitioners, the widow, and the infant children of Mrs.
Underwood the only persons interested in the estate of Ransom Gardner.

The showing made by the petitioners for this delay is that,
after the decision of the case in this Court, they respectively
wrote and telegraphed to Jordan for information concerning
the same; that he for a long time failed to respond thereto,
and, after repeated inquiries by them, he, in July, 1887, by
letter from Indianapolis, Indiana, to Marland R. Gardner,
informed said Gardner in general terms that the decree of
the court below was reversed, and stated that he had been
injured by a fall, and was unable to attend to business, and
was at Indianapolis for treatment; that they therefore refrained from making further inquiries, waiting for Jordan to
recover; that he did not recover, and died as before stated.
After his death they proceeded to investigate matters.   Marland R. Gardner was living all this time at Wabash, Indiana;
but the said Eloise A. Dodge and her husband resided in
Lansing, Michigan, where the opinion could have been obtained at any time after its filing, which was February 15,
1887.   No reason is given why the opinion was not sought
for information, except their confidence in Jordan.   They

state that after Jordan's death they were much surprised to learn by the language of the decree that Jordan was granted the whole property to their exclusion, but they fail to show when they learned this.   They offer further in excuse that their sister was dead, as was also Allen G. Wells; that the widow had become aged and infirm, and, Marland R. Gardner living out of the State, they were put to great trouble and expense in making investigations into the facts of the case, which necessarily consumed considerable time.

They claim by such investigation to have ascertained the fact that the contracts belonged to their father at his death, and that Jordan committed a fraud upon them, which was not fully discovered by them until since the June term, 1888, of the Supreme Court.   But, as before said, they offer to the Court no proof of these facts, save their own testimony, and the record which has already been before us in *Day v. Cole.*

In the light of that record, and other facts shown, the delay in bringing this matter to our attention is not excused. As before said, Mrs Dodge did not appeal from the lower court; and it seems plain to us that Marland R. Gardner did know, or ought to have known, the full claim of Jordan long before the decree in this Court.   The letter which he claims to have received in July, 1887, from Jordan is not produced, but in the answer to this petition, filed by the representatives of Jordan, are three letters written by Marland R. Gardner, as follows, which were all that could be found among his papers and effects:

"WABASH, IND., Feb. 22, 1887.

"O. L. JORDAN, ESQ.,
        "Kalamazoo, Mich.,—

"*Dear Sir:*   Am glad you have received a favorable decision in your Blendon suit.

"I would like to more fully understand how you propose taking hold of Lansing suit, and what I will be called upon for in the way of expenditures.   Will it be necessary for me to attend trial?        "Yours, etc.,

                "M. R. GARDNER."

"WABASH, IND., June 18, 1887.

"O. L. JORDAN, ESQ.,

"Kalamazoo, Mich.,—

"*Dear Sir:* How have you succeeded with your Blendon suit? What position does the Supreme Court decision leave it in as to your final possession of the land?

"I wrote you some time ago to know about my Lansing suit, but received no reply.

"Respectfully yours,

"M. R. GARDNER."

"WABASH, IND., Aug. 10, 1887.

"O. L. JORDAN, ESQ.:—

"Regret to hear of your misfortune by fall.

"When you return home, come this way and rest a day or two with me. It will break your trip, and I would like to have you see this place and my business. I would also like to have a good business talk with you. Make it a point to spend Sunday here, if you wish.

"Buy your ticket via Anderson. If you can buy through to Kalamazoo, via Anderson and Niles, and get a stop-off here, it will be your best way home.

"Yours, etc.,

"M. R. GARDNER."

It will be seen that he is most anxious about his "Lansing suit", and that he speaks of the "Blendon suit", the one involved here, as Jordan's suit.

An examination of the record in the suit of *Day v. Cole* shows that Marland R. Gardner was sworn as a witness in the case. From his own testimony, and that of others, it appears that he was on the land with Allen G. Wells in 1877 or 1878 (his father having died in 1876), when Wells was dealing with the land and offering to sell it. At that time he made no claim that Wells had no right to thus deal with it.

It does not seem possible from the record in the case of *Day v. Cole*, and the facts admitted in the petition, and all the circumstances of the case, that Marland R. Gardner did not know what was the claim of Jordan in that litigation. Jordan made no secret of his claim that he owned the whole

title to the Cole contracts, and the lands described therein. It is shown by the pleadings in both suits; and at the time Day filed his bill Jordan was selling land and timber under a claim of absolute ownership. There is no act of his shown inconsistent with the idea that he claimed the whole title, to the exclusion of the Gardner heirs and everybody else, from 1880 to the time of his death.

The estate of Gardner was closed and settled in 1880, without any attempt to lay claim to these lands. If it is possible that Marland R. Gardner was deceived as to his rights for a period of 12 years, he has only himself to blame for it, and he has been so grossly negligent in the matter that courts will not hasten to relieve him.

Marland R. Gardner was about 21 at the time of his father's death. He had been in the employ of A. G. Wells & Co. for five years before that time. He remained in Wells' employ afterwards. He knew that Wells, as surviving partner, took complete control and management of these lands, and assumed the right to compromise and settle, by a division of the lands or otherwise, the disputed title to the same.

He claims that he had nothing to do with keeping the books of the firm, and knew but little of the condition of the business, and that his father died suddenly, without stating to him or any of the family the state of his business. He therefore relied implicitly upon Wells and Jordan, and made no inquiries for himself.

Such laches are inexcusable if it be true. Adult persons in the full possession of their natural senses, and having ordinary understanding, cannot thus sit down upon their rights, and trust in others, without inquiry, for a dozen years, in the face of six or eight years of fierce contention and litigation about the ownership of property, to which litigation they are parties, having their full day in court, pay no attention to it, trusting implicitly and blindly in those who avow their interest as entirely antagonistic to theirs, and then, nearly two-

years after final decree has been entered in the Court of last resort, come in and ask relief from their own supineness and folly. If this were to be permitted, there would never be an end to litigation, or a determination in a suit upon which the parties to it or third persons could rely.

But we are entirely convinced anew that the decree of this Court is right, and are satisfied that the Cole contracts were, at the death of Gardner, the property of A. G. Wells & Co., from the evidence in the *Day v. Cole* record, and the subse-. quent acquiescence of Gardner's representatives, who had every opportunity of knowing where the ownership was. And, this being so, there is no offer in the petition to show, or claim made, that, as between Wells and the Gardner estate, Wells, as surviving partner, could not convey the same to Jordan. The theory and allegation of the petition is that the contracts were never the property of A. G. Wells & Co., and that Gardner never assigned any interest therein to Wells or the copartnership.

A further reason for not granting this petition is apparent when we notice what has been done since the entering of the final decree in this Court in *Day v. Cole.*

It is alleged in the petition that Orleans L. Jordan, before his death, paid to Loren Day the full sum required in said decree, to wit $5,399.09; that he bargained and "sold divers parcels of lands to divers different persons, and executed for some of such parcels divers deeds of conveyance, and, for other parcels thereof, divers contracts of sale;" and that since his death Lucy M. Jordan and Arthur W. Jordan have also sold other tracts of lands to different persons.

Thus have the rights of third parties intervened to portions of these lands.

It is but just to state that an answer was filed to the petition, denying the charges of fraud and the facts therein alleged, by the widow and son of Orleans L. Jordan, but we have not found it necessary to resort to it in the decision of

this matter, because the petition itself, and the record of the suit to which we were referred therein, furnish ample reasons why the prayer of the petitioners should not be granted.

We may also with propriety say that the result of our renewed examination of the record in *Day v. Cole*, in the light of the allegations of the petition, fails to show, to our minds, any unfair dealing by Jordan with the Gardner heirs, or any want of integrity in his conduct as an attorney and officer of the court.

The petition is denied, with costs, and the decree of this Court in *Day v. Cole* must stand, and be enforced as it is; and all process heretofore issued in this Court in stay of the same, or in restraint of the title or control of the lands therein described, in the executrix and executor of Orleans L. Jordan, or his devisees, is hereby vacated and dismissed.

SHERWOOD, C. J., and CAMPBELL, J. concurred. CHAMPLIN and LONG, JJ., did not sit.