COOK *v.* HALL.

[Two Cases.]

1. TAX SALES—PETITION TO VACATE—LACHES.

A petition to set aside a tax sale, though based on jurisdictional defects, will not be entertained where filed more than two years after petitioner learned of the sale, and he fails to excuse the delay, and the rights of third persons have intervened.

2. SAME—RIGHTS OF THIRD PERSONS.

The rights of a purchaser of timber products from a tax-title claimant cannot be litigated on a petition to set aside the tax sale.

Appeals from Alger; Steere, J. Submitted January 30, 1900. Decided March 13, 1900.

Petitions by Chauncey F. Cook against Sidney S. Hall and others to set aside certain tax sales. From decrees dismissing the petitions, petitioner appeals. Affirmed.

These two cases involve the validity of the tax deeds issued by the auditor general for the sale of lands delinquent for 1893 and 1894. The same lands are involved in both cases. The sale for the delinquent taxes for 1893 took place in December, 1895; and for 1894, in December, 1896. Defendant Gubtil became the purchaser from the State of a portion of the lands on January 15, 1897; Hall and Leighton became purchasers of other parcels in Decem-

ber, 1896; and defendant Brown purchased one 40 at the county treasurer's sale December 7, 1896.

The petitioner resides at Hillsdale. He made no attempt to pay his taxes when due, or to appear in the proceedings instituted by the auditor general to foreclose the tax liens. He knew as early as January, 1897, of the purchase by the defendants Gubtil, Hall, and Leighton, and tried to negotiate with them for the repurchase, and sent his attorney to Alger county for that purpose. Even then he took no steps to have the tax deeds set aside, or to otherwise protect his rights. He rested until 1899, when he filed the petitions in these cases. When he signed and swore to them does not appear, as neither the petition nor the *jurat* is dated. His notice to the defendants that the petition would be brought on for hearing on the 23d day of May, 1899, was dated March 29, 1899. The petition is entitled in the original proceedings; sets forth the petition filed by the auditor general; the proceedings and sale thereunder; reasons why the sale should be held void; the cutting of the timber from the lands by Gubtil, who purchased the title of Hall, Leighton, and Brown; the sale thereof to defendant the Manistique Lumbering Company; the cutting and sawing of the same by the defendant the Grand Marais Sawmill Company; that the lumber cut therefrom is now piled upon the docks of said company, awaiting shipment; the sale by the Manistique Lumbering Company to the defendant the Edward Hines Lumber Company; that some timber still remains upon the land; that other logs have been cut, and are banked along the shores of Lake Superior, ready for towing at the opening of navigation; and that in November, 1897, petitioner sent the auditor general a draft for $250 in payment of the taxes for the year 1894; that said draft was paid and charged to his account; and that in May or June, 1898, the auditor general returned a check of the state treasurer to him for said amount, stating that the land was not subject to redemption. The petition then asked:

"(1) That the petition may be treated, and have the same effect, as a bill of review.

"(2) That the decree entered in the auditor general's proceedings for the sale of the lands for taxes may be set aside and vacated.

"(3) That the sale of the lands to the defendants be set aside, and the deeds issued be ordered to be delivered up and canceled, and, in default thereof, that a decree may be made on this petition that shall operate as a reconveyance of the property to the petitioner.

"(4) For the writ of injunction.

"(5) That the logs, timber, ties, and other forest products taken from the lands by defendant Gubtil, and sold by him to the Manistique Lumbering Company, be decreed to be the property of the petitioner.

"(6) That a receiver be appointed to take charge of these forest products.

"(7) That the petitioner may be given costs, and also the privilege of filing a bill of review if he shall be so advised, or if it is deemed necessary by the court."

The infirmities claimed in the decree and sale are as follows:

" (1) That said decree was prematurely entered, and the parties interested herein were thereby deprived of substantial rights, in violation of the statute in such case made and provided.

" (2) That said court did not continue in session for five days after the day fixed for hearing objections to said petition of the auditor general, as required by law, and no one interested was able to appear and make objection to said taxes within five days after the date so fixed for hearing objections to said petition, but was thereby prevented from so appearing and making objections.

" (3) That, at the time said petition for the sale of lands for the taxes of the year 1894 was prepared and filed by the auditor general herein, the said hereinbefore-described lands had been bid in and sold to the State, and were held by the State under such bid, for the taxes of the year 1893, and that the said hereinbefore-described lands were included in said petition while so held by the State for the taxes delinquent for the year 1893.

" (4) That when said lands were sold to the said William Leighton, Sidney S. Hall, Charles R. Brown, and Benjamin W. Gubtil, they were disposed of in one sale and as

one purchase, and included the taxes delinquent for both the years 1893 and 1894; and the defects affecting either year or any one tax extended to and vitiated the whole sale and purchase.

" (5) That when said lands were purchased by William Leighton, Sidney S. Hall, Charles R. Brown, and Benjamin W. Gubtil from the State as aforesaid, said William Leighton, Sidney S. Hall, Charles R. Brown, and Benjamin W. Gubtil did not pay and discharge all taxes which were at the date of said purchase a lien and charge upon the same, as required by law, and that therefore said sale has never been perfected.

"(6) That there was no proper proof or evidence before the court upon which to base such decree.

"(7) That at the time said decree herein was made, filed, and entered, the different amounts had not been, and were not, entered by the clerk of said court and county in said tax record as the amounts decreed against said lands for delinquent taxes herein, but the same were subsequently entered after said decree had been made.

"(8) That said proceedings whereby it is sought and attempted to take said hereinbefore-described lands for the taxes delinquent for the years 1893 and 1894 are contrary to and in violation of the Constitution of the State of Michigan and the Constitution of the United States,— particularly of the fourteenth amendment to the Constitution of the United States,— in this: That said proceedings result in an attempt to deprive this petitioner of his property without due process of law.

"(9) That said taxes for the year 1894 have been fully paid and discharged by your petitioner."

The court refused to appoint a receiver, but granted a preliminary injunction. The notice given by petitioner to defendants stated that the petition "will be founded upon the pleadings and proceedings herein, now on file in said court, together with the records of said court herein, and the petition of Chauncey F. Cook, the petitioner, filed in said matter, with a true copy of which you are hereby served." No further pleadings appear in the case, except that defendant Charles R. Brown filed a disclaimer, but it appears that this was not done until after the case was heard and disposed of. It therefore cannot be considered as a part of the record.

The record shows that respondents Gubtil, Hall, and Leighton appeared generally through their solicitors, and that the Manistique Lumbering Company, the Marais Lumber Company, and the Edward Hines Lumber Company appeared specially through their solicitors. These defendants objected to the jurisdiction of the court to hear and dispose of the matter. The court took the motion under advisement, but did not dispose of it until the entry of the final decree. The objections to this jurisdiction are thus stated:

"(1) That no review of the proceedings, either for the sale of the 1893 or 1894 taxes, could be had by petition, for the reason that the decrees upon both of said proceedings had been enrolled, and the sales made thereon had been confirmed, more than two years prior to the time of the filing of said petitions.

"(2) That the time given by the statute within which petitioner had a right to move the court to set aside the decrees had long since lapsed, and that the petitioner was barred from such relief by petition.

"(3) That the petitioner, by his petition, sought to litigate conflicting titles between third parties and those not parties to the record in the original proceeding by this petition, and that no such matters could thus be litigated, and no decree made thereon.

"(4) That this proceeding was entitled in the original proceeding of the auditor general for the sale of taxes upon certain lands for the years 1893 and 1894, which was a special statutory proceeding for the purpose of foreclosing the State's lien, and that in such proceeding the conflicting rights of parties to personal property could not be litigated or determined.

"(5) That the petitioner's right to open the original tax proceedings is barred by statute.

"(6) That, if the proceedings had been taken within the time allowed by statute, no questions could have been considered by the court on a petition to open decree, except (a) that the lands affected were not liable to taxation for the year for which the same were sold; or (b) that the taxes had been paid thereon; or (c) that the court, in taking the proceedings, had acted without jurisdiction.

"(7) That the petitioner's proceeding was multifarious, both as to parties and subject-matter."

At the hearing, counsel for respondents asked that petitioner be compelled to determine whether he was proceeding under his petition as a bill of review, or a petition therefor, or as a petition in the original proceedings by the auditor general for sale. This was declined, and the court also held this motion in abeyance. The petitioner first took up the case of the sale for 1894. Some testimony was introduced by petitioner under objection and exception. During that hearing certain stipulations were entered into in open court, that certain testimony taken upon that case should also be considered in the case of the sale for 1893,—subject, however, to the same objections that were made to the introduction of any testimony. The decrees were duly enrolled, and the sales confirmed. The court found that the sale of the lands for the taxes of 1893 was invalid, and the sale for the taxes of 1894 was valid, and thereupon entered decrees dismissing both petitions.

*John A. McKay* (*Dan H. Ball* and *Thomas E. Barkworth*, of counsel), for petitioner.

*George W. Davis* (*Humphrey & Grant*, of counsel), for respondents Hall, Leighton, and Gubtil.

*De Vere Hall*, for respondents Manistique Lumbering Co. and Marais Lumber Co.

GRANT, J. (*after stating the facts*). 1. These petitions cannot be treated as petitions for leave to file bills of review. In such petitions the petitioner must present to the court his proposed bill, excuse the delay, and show the merits of his case. Petitioner knew that his lands were assessed and taxed. He knew the time at which these taxes became due and payable. He is presumed to know, and probably did know, all the proceedings taken by the auditor general under the law to sell his lands for non-payment. He has made no affidavit or showing of merits. No complaint is made of the assessment, or that the taxes were unjust. He attacks only the proceedings leading up

to and upon the sale. He knew that his lands were sold, and that some of the defendants had obtained title thereto, and yet chose to rest upon his rights for two years, without taking any steps provided by the law to test the validity of the proceedings. Some of the defendants have meanwhile become interested, not in the land itself, but in the timber cut therefrom, and without any knowledge that the petitioner claimed any interest therein. Under such circumstances, equity requires that a party move with promptness to assert his rights, and to protect the interests of those who may become innocent purchasers of the products which may be severed. Petitioner has utterly failed to make any showing entitling him to the favor or grace of a court of equity. His present position is one of his own choosing, for which he has no one to blame but himself. The rule in such cases is well stated in *Campau* v. *Van Dyke*, 15 Mich. 371:

"Sound public policy and a just regard for the stability of private rights require that the solemn judgments and decrees of courts, affecting the rights of property, shall not be lightly disturbed, nor, without the strongest reason, allowed to be impeached after any considerable period of time, during which the parties have been allowed to rely upon them, and others may have obtained interests on the faith of them, or the evidence by which they might have been sustained has been lost. And if a party to such judgment or decree might, after any considerable period, impeach its validity without showing a proper excuse or reasonable justification for the delay, * * * a general feeling of insecurity and distrust, very injurious to property and business, must naturally result."

The same doctrine is asserted in the following cases: *Warner* v. *Juif*, 38 Mich. 662; *McVickar* v. *Filer*, 31 Mich. 304; *Day* v. *Cole*, 65 Mich. 154 (41 N. W. 505); *Sanford* v. *Haines*, 71 Mich. 116 (38 N. W. 777). Parties who have thus acted cannot complain if courts of equity leave them to those remedies which the strict rules of law afford. Petitioner has made no attempt to excuse his laches.

We have previously commented upon the policy of the present tax law of this State. It seeks to give every man the opportunity to appear in court and raise objections to the validity of his tax. As we have frequently said, "Every man is presumed to know the law," and undoubtedly all landowners do know that their lands are subject to sale for nonpayment of the taxes assessed against them. There is therefore little excuse for any failure to protect their interests. The law has also seen fit to expressly limit the power of the courts to set aside the confirmation to two cases, namely, where the taxes have been paid, or the property was exempt from taxation. The court has held that, when application is made within a reasonable time, it will set aside the decree and sale in case of an entire lack of jurisdiction. If it appears upon the face of the proceedings that the court never acquired, or, having acquired, had lost, jurisdiction, this is a complete defense in a suit at law. To his legal remedy, under such circumstances, the tax law and equity leave him. Probably, being in possession, he might maintain a suit in equity to remove a cloud from title, where the proceedings were void upon their face.

2. These petitions must be treated as ones to set aside the decrees in the original proceedings, and to permit the petitioner to attack the validity of the decrees and sales; and the sole issue in those proceedings was, Were the decrees valid? The tax law is neither designed, nor is it adapted, to the trial of the rights of parties who have bought the products of these lands from either the original owner or the tax title owner after the sale. If either party seeks to reach these products which have been severed from the realty and sold as personalty, he must commence by an original proceeding, in which the parties interested can be summoned into court and defend their rights. *Crawford* v. *Tuller*, 35 Mich. 57; *Spaulding* v. *O'Connor*, 119 Mich. 45 ( 77 N. W. 323).

This disposal of the cases renders it unnecessary to de-

termine the questions raised upon the tax proceedings. Some, if not all, of them have already been disposed of by former decisions.

The decrees are affirmed, with costs.

The other Justices concurred.