BENDING v. AUDITOR GENERAL.

1. TAXATION—TAX SALES—PREMATURE DECREE.
   A decree for the sale of land for taxes, rendered before the expiration of the five days' notice provided by the statute (1 Comp. Laws, § 3889), is premature and therefore void.

2. SAME—DECREE—VALIDITY—STATE TAX LAND.
   A decree for the sale of land for taxes, rendered at a time when the land is held as State tax land under a decree and sale for the taxes of a prior year, is void.

3. SAME—VALIDITY OF DECREE—MANNER OF RAISING QUESTION.
   Intervening petition by the aggrieved owner is the proper remedy for raising the question of the validity of a decree for the sale of land for taxes, unless the rights of third parties have intervened.

4. SAME—RIGHTS OF THIRD PERSONS.
   Where a tax sale purchaser sold the timber on the land to a third person before any steps were taken by the original owner to have the tax sale set aside, the purchaser of such timber being entitled to defend his rights in an original proceeding, the original owner was not entitled to maintain a petition in the tax-sale proceedings to set aside the decrees, but was compelled to institute an original suit for that purpose.

5. SAME—LACHES.
   A landowner who pays no taxes, and takes no proceedings to protect his title for ten years, is guilty of such laches as to bar his right to question the validity of tax sales, though he petitions within eight months after he learns that certain persons had bought the land six, and the timber thereon two, years before.

Appeal from Ontonagon; Haire, J.   Submitted June 15, 1904.   (Docket No. 25.)   Decided September 13, 1904.

Petition by Ferdinand Bending against Perry F. Powers, auditor general, Charles H. Chick, and the Diamond Match Company to set aside the decree and sales of certain lands delinquent for the taxes of 1892, 1893, and 1894. From a decree dismissing the petition, petitioner appeals. Affirmed.

*M. J. Sherwood*, for petitioner.

*J. B. Judkins*, for defendant Chick.

*Ball & Ball*, for defendant Diamond Match Co.

MOORE, C. J.   The circuit judge, in disposing of this case, filed a written opinion, which contains a concise statement of the questions involved.   It is as follows:

## "FACTS.

" In this cause petitioner, Bending, asks the court to vacate and set aside the decrees and the sales thereunder made on certain lands in Ontonagon county for the years 1892, 1893, and 1894.   The land is described as the southwest quarter of section seventeen (17), town forty-eight (48) north, of range thirty-eight (38) west.   Petitioner claims that the tax decrees and sales for the above-named years were void.   The Diamond Match Company and Chick were each notified by petitioner, and the former appeared specially for the purpose of objecting to the jurisdiction as against it.   Chick did not appear.   By permission of the court, counsel for Chick was allowed to file a brief after the hearing.   He also objects to the jurisdiction in these proceedings.   No testimony was offered by the Diamond Match Company or by Chick at the hearing.   It is clearly undisputed that for the taxes of 1892 on the above land the decree was rendered on the 12th day of November, 1894, before the expiration of the five days from the advertised date of hearing; for the taxes of 1893 the decree was rendered on November 4, 1895, which was after said five days had elapsed, but while the land was held as State tax land for the year 1892; for the taxes of 1894 the

decree was rendered on the 27th of October, 1896, and before the said time limit had expired. Briefly stated, the decrees for the taxes of 1892 and 1894 were prematurely rendered, and the decrees for the taxes of 1893 were rendered while the land was held as State tax land. The decree for the taxes of 1893 was enrolled at the request of one James Everett Ball, on the 3rd day of April, 1897. The land was sold to the State for the taxes of 1892 at the tax sale held in December, 1894. At the tax sale for taxes of 1893, held in December, 1895, defendant Chick became the purchaser for the said taxes of 1893, and also purchased from the State list at the same time the rights of the State in the lands under this bid for the aforesaid taxes of 1892. At the tax sale in December, 1896, Chick again purchased the land for the taxes of 1894.

" Petitioner, Bending, was the owner of the original title to the above-described land. On December 31, 1898, Chick, the tax-title purchaser, sold to the Diamond Match Company all the timber on the land, under a bill of sale with full warranties. The deed for this sale was recorded January 19, 1899. In this deed a limited time was given to remove the timber. In May, 1902, it appears that Bending first ascertained that his land and the timber thereon had been sold as above stated. The Diamond Match Company was about this time notified by M. J. Sherwood, petitioner's solicitor, not to cut the timber, and that the tax titles were void. Negotiations for settlement were begun soon after this between Bending's solicitor and the agent of the Diamond Match Company and solicitor for Chick, and were continued to the time of filing these petitions; and it appears from the affidavits of Mr. Sherwood, petitioner's solicitor, D. J. Norton, and Ira E. Bush, filed in this cause, that in September, 1902, the agent of the company agreed not to cut the timber until there was a settlement of the dispute as to the tax titles. These affidavits were filed by permission of the court after the hearing of this cause. Afterwards, in the winter of 1902 and 1903, the Diamond Match Company cut the timber on the land. In January, 1903, petitioner filed this petition to vacate the several decrees and sales. Testimony was also introduced by petitioner, which tended to show that at the hearing in the matter of taxes for 1893 the register filled in the 'amounts decreed against lands' after court had adjourned, and after the decree was signed. I do not consider this important in this cause.

## "LAW.

"*Claims of Parties.* Petitioner claims that, the tax titles being void, he is entitled to have them vacated and set aside on paying taxes and interest advanced. Defendants Diamond Match Company and Chick claim that the petition should be dismissed for the reasons:

"(1) That the court had no jurisdiction to pass on these cases in a proceeding begun by a petitioner, because the rights of the Diamond Match Company, a third party, have intervened, and that these rights cannot be litigated except in an original proceeding.

"(2) Because, the decree having been enrolled, it cannot be opened except by bill of review.

"(3) Because the petitioner is guilty of laches, and not entitled to relief.

"(4) Because the decree for the taxes of 1893, entered in November, 1895, was a valid decree.

"1. *As to the Validity of the Decrees.* Upon the repeated decisions of our Supreme Court, the decrees for the taxes of 1892 and 1894 are void, because rendered prematurely. *Peninsular Sav. Bank* v. *Ward*, 118 Mich. 87, 93 (76 N. W. 161, 79 N. W. 911); *McGinley* v. *Mining Co.*, 121 Mich. 88 (79 N. W. 928); and others.

"The decree for the taxes of 1893 is void, because the land had been sold for the taxes of 1892, and was then held as State tax land. *Connecticut Mut. Life-Ins. Co.* v. *Wood*, 115 Mich. 444 (74 N. W. 656); *Aztec Copper Co.* v. *Auditor General*, 128 Mich. 615 (87 N. W. 895); and others.

"That petition is the proper method of raising this question, see the above decisions.

"The decrees in the case at bar having been void for the above reasons, it is not necessary to discuss the question of the method of entering the 'amounts decreed against lands' by the register. It is also clear that, unless one of the first three points raised by defendants is good, it is the duty of the court to vacate the decrees.

"2. *As to the Question of Jurisdiction.* This brings us to the first and principal point raised and contended for by the defendants, viz., that the court has no jurisdiction to hear the petition, because the rights of a third party have intervened; that, if petitioner has any rights in the premises, he must begin by some original proceeding.

"It is undisputed that defendant Chick made his last tax purchase of this land for the taxes of 1894 in December, 1896; that on December 31, 1899, he sold the timber on

the land to the defendant Diamond Match Company; that in May, 1902, petitioner, Bending, ascertained that his land and timber were sold; that some negotiations for settlement were made in September, 1902, which failed; that the petition in this cause was filed in January, 1903—at least eight months after the discovery of the condition of the title of Bending; that the timber was cut by the Diamond Match Company in the winter of 1902 and 1903. The last tax deed was recorded about six years, and the Diamond Match Company's timber deed about two years, previous to the beginning of this proceeding, and Bending knew the status of affairs pertaining to the title eight months previous thereto.

"It is clear to the court that the above undisputed facts bring this case under that class of cases where the rights of third parties have intervened, and must be decided accordingly. The Diamond Match Company was in no sense a party to the original proceeding. Chick, the auditor general, and Bending certainly were. The company merely purchased the timber, and received a deed therefor from Chick, and is clearly a third party; otherwise there can be no such thing as a third party to judicial and public sales. Bending, Chick, and the auditor general had to do with the taxes. Except that its title received from Chick may depend upon the validity of the tax proceedings, the company had nothing to do with the taxes. To contend that the company is a party to the original proceedings strikes the court as absurd. It is a third party, and must be treated as such in this cause. The Diamond Match Company, being a third party, and its rights in the premises having intervened long before the filing of the petition, the court is constrained to hold the law in conformity with the views of defendant's counsel:

"'That, where the rights of third parties have intervened, these rights cannot be litigated except in some original proceeding in which such third persons may be made parties and have an opportunity to answer and defend.'

"This was settled by an early decision in this State, viz., *Crawford* v. *Tuller*, 35 Mich. 57. See, also, *Jewett* v. *Morris*, 41 Mich. 689 (3 N. W. 186); and *Spaulding* v. *O'Connor*, 119 Mich. 45, at page 50 (77 N. W. 323). The learned counsel for petitioner urges that the case at bar is covered by the rule in *Ritson* v. *Dodge*, 33 Mich. 463, and *Brewer* v. *Dodge*, 28 Mich. 359. These cases arose in re-

gard to the same property, and it seems that a previous decree relating to the property had been set aside on motion as having been unwarrantably entered.    In deciding the case of *Ritson* v. *Dodge,* Chief Justice COOLEY says:

"'It is insisted on behalf of complainant that, inasmuch as he bought of Brewer while a decree existed in his favor, and after the time for appealing had expired, the complainant is such a purchaser in good faith as cannot be affected by a subsequent order setting aside the decree, at least until after he has had notice, and an opportunity to be heard.    No authority is cited to this petition, and we know of none for it.    The decree was found to have been entered without authority, and there is no question before us but that, as between the parties thereto, it was properly set aside.    A purchaser under a decree must ascertain at his peril whether the decree was warranted or not.'

"Whether Chief Justice COOLEY intended to make the statement in the *Ritson Case* a universal rule is not very clear, but, if he did, he afterwards radically changed it in the case of *Crawford* v. *Tuller* 35 Mich. 57, where he uses this language:

"'We held in the case of *Hill* v. *Robinson,* decided last term (not reported), that a party attacking a judicial sale as invalid after the rights of a third party had accrued, should be required to do so by some original proceeding in which an issue could be formed and tried in the ordinary way.'

"An examination of subsequent cases shows that the rule in *Crawford* v. *Tuller* has ever since been recognized as the rule in Michigan.    Counsel for petitioner cites *Cook* v. *French,* 96 Mich. 525 (56 N. W. 101), as following the *Ritson Case.*    An examination of the case of *Cook* v. *French* shows that the action was begun by bill of review, and not by petition.    An examination of other Michigan cases shows the rule to be, as above stated, that where a party seeks to attack a judicial decree after the rights of third parties have intervened, he must do so by an original proceeding, and not by motion or petition. The case of *Crawford* v. *Tuller* is cited with approval in *Spaulding* v. *O'Connor,* 119 Mich. 45, at page 50 (77 N. W. 323).    In the case of *Cook* v. *Hall,* 123 Mich. 378, at page 385 (82 N. W. 59), Justice GRANT says:

"'These petitions must be treated as ones to set aside the decrees in the original proceedings, and to permit the petitioner to attack the validity of the decrees and sales; and the sole issue in those

proceedings was, were the decrees valid? The tax law is neither designed, nor is it adapted, to the trial of the rights of parties who have bought the products of these lands from either the original owner or the tax-title owner after the sale. If either party seeks to reach these products which have been severed from the realty and sold as personalty, he must commence by an original proceeding, in which the parties interested can be summoned into court and defend their rights. *Crawford* v. *Tuller,* 35 Mich. 57; *Spaulding* v. *O'Connor,* 119 Mich. 45 (77 N. W. 323).'

"It will be noticed that he cites both *Crawford* v. *Tuller* and *Spaulding* v. *O'Connor.*

"The cases of the *Aztec Copper Co.* v. *Auditor General,* 128 Mich. 615 (87 N. W. 895), *Thomas* v. *Moore,* 120 Mich. 535 (79 N. W. 812), and *Connecticut Mut. Life-Ins. Co.* v. *Wood,* 115 Mich. 444 (74 N. W. 656), were all between the original parties to the tax proceedings; that is, between the owners or mortgagees of the property as petitioners and the auditor general and tax-title purchasers as defendants. Many more cases are cited by counsel on both sides, all of which have been thoroughly examined by the court, and they do not change the rule as first above stated. A further discussion seems unnecessary. Counsel for petitioner appears to think that there is no question but that the decree should be vacated as to Chick and the auditor general, even if it is not as to the Diamond Match Company. As the court understands the decisions above quoted, the law as it now stands makes no exceptions to the parties concerned. If the rights of third parties have intervened, a petition will not lie. Chick has sold the timber on this land to the Diamond Match Company. He is vendor of the timber on this land. He is equally interested with the company in this transaction. He may have equities in the premises, unknown at this time to the court, that will appear on the hearing of the cause, if any is had. An accounting may be necessary, wherein the payment of the taxes, the amount of the timber, and other such matters may require adjudication between the parties. With this view on the question of jurisdiction, it becomes unnecessary to discuss the questions of enrollment and laches."

Counsel for petitioner insists the trial judge put a misconstruction upon the decisions of this court to which he referred in his opinion, and says:

"This is not a petition for rehearing, nor is it a bill of review strictly, but it partakes of the nature of both. In the peculiar practice under the tax law there can be no such thing as a rehearing of the auditor general's petition, or of a review of that hearing. The tax law (1 Comp. Laws, § 3893) provides (section 70) that the decree of sale may be set aside on motion under certain circumstances, where the motion is made within one year from the time the landowner has actual notice of the sale. It does not provide for, nor does it contemplate, a rehearing of the petition. Under the interpretation of the tax law given by this court, when the decree of sale made on the auditor general's petition is set aside, it is done on the condition that the landowner shall pay to the tax purchaser or to the State the amount of taxes, with interest and penalties, alleged to be due on the lands in the auditor general's petition. Bending, in this case, has offered to comply with this condition."

He urges that, as the decrees were taken *pro confesso*, the proper method to set them aside is by petition. He also says:

" *Cook* v. *Hall*, 123 Mich. 378 (82 N. W. 59), presents an entirely different case from the one at bar. It does not decide that petitions will not lie where third parties have purchased relying upon the tax decree, but, if anything, impliedly holds that it will lie. That case was decided on the ground of laches in Cook. This court recognized the fact that Cook, under the tax law, might bring the petitions which he sought to bring had he moved in time. Cook attempted in his proceedings to make ' third ' parties account for timber which had been severed from the land, and sold to them after being severed—sold as personal property. This the court held could not be done under the proceedings authorized by the tax law, because the law was not designed for that purpose.

" 'The tax law is neither designed, nor is it adapted, to the trial of the rights of parties who have bought the products of these lands from either the original owner or the tax-title owner after the sale. If either party seeks to reach these products which have been severed from the realty and sold as personalty, he must commence by an original proceeding, in which the parties interested can be summoned into court and defend their rights. * * * Some of the defendants have meanwhile become interested, not in the land itself,

but in the timber cut therefrom, and without any knowledge that the petitioner claimed any interest therein. Under such circumstances equity requires that a party move with promptness to assert his rights and to protect the interests of those who may become innocent purchasers of the products which may be severed.'

"In the case at bar there is no attempt to reach product severed from the land. At the time these petitions were brought, Bending did not know that any product had been severed from the land. No product of the land has been severed and sold as personalty. All of the defendants are interested in the land itself. No one of them is interested in the timber cut therefrom, and none of them can be heard to say that at the time the timber was cut it was without the knowledge on the part of the respondents that Bending claimed an interest therein. The *Cook Case* and the case at bar are nowhere similar, and it would be unconscionable here to hold that the Diamond Match Company may raise as a barrier its broken pledge not to cut the timber to estop Bending from his rights, and by the very reason of its broken pledge and the abuse of his confidence shut him out from the remedy by motion as authorized by the tax law."

The claim of waiver of laches in this case is based upon the conversation which occurred between Mr. Sherwood, who represented the petitioner, and Mr. Hotchkiss, who represented only the Diamond Match Company, in September, 1902. Conceding this conversation should operate as a waiver on the part of the Diamond Match Company for the delay in filing the petition after the conversation occurred, what shall be said of the laches of the petitioner which occurred before this conversation? The record discloses he became the owner of this land in April, 1893. He allowed it to be sold in 1896 for the taxes of 1892. In 1897 it was sold for the taxes of 1893. In 1898 it was sold for the taxes of 1894. The Diamond Match Company paid the taxes for 1898 and the subsequent years. The taxes of 1895, 1896, and 1897, were not paid by the petitioner. We have, then, the case of a landowner who knows he ought to pay taxes upon his land every year who pays nothing thereon for 10 years. He knows, in case of nonpayment, that his lands will be

returned, and that it will be the duty of the auditor general to sell them.   He knows that some one is likely to buy them, and that, if no bids are received, they will be bid in by the State, and later may be sold to an individual.   He permits this to be done year after year, and he now asserts that, because he filed this petition within eight months after he learned that the  Diamond Match Company bought the timber upwards of two years before, and Mr. Chick bought the land six years before, he has not been guilty of laches.

We agree with the interpretation put upon the decisions of this court by the learned circuit judge.   We are also of the opinion that if a taxpayer was ever guilty of such laches that he ought not to be permitted to open a decree, this record  discloses such a case.

The decree is affirmed.

The other Justices concurred.