### PLATZ *v.* ENGLEHARDT.

1. TAXATION—TAX SALES—PREMATURE DECREE.

A decree for the sale of land for taxes, rendered before the expiration of the five days' notice provided by the statute (1 Comp. Laws, § 3889), is premature, and therefore void.

2. SAME—ABANDONED LANDS—TITLE OF STATE.

The State gets no title to lands deeded by the auditor general to the State as abandoned lands, under section 127 of the general tax law of 1893 (Act No. 206) and Act No. 154 of the Public Acts of 1895, as limited by 1 Comp. Laws, § 3949, where the tax sales on which the proceeding is based are void.

3. EJECTMENT—CLAIM FOR IMPROVEMENTS—ELECTION BY OWNER—
   APPLICATION TO TAX HOMESTEAD LANDS.

   A defendant in ejectment, holding under a State homestead
   certificate, who makes a claim for his improvements and has
   their value determined, cannot, after plaintiff elects to take
   the value of the land, first claim on appeal that the statute
   (3 Comp. Laws, §§ 10995–10997) allowing plaintiffs in eject-
   ment to so elect does not apply to controversies arising over
   State tax lands. Act No. 206, Pub. Acts 1893.

Error to Presque Isle; Emerick, J. Submitted Novem-
ber 17, 1904. (Docket No. 196.) Decided December 14,
1904.

Ejectment by Henry Platz against Arthur Englehardt
and Jessie Englehardt. There was judgment for plaintiff
on a verdict directed by the court, and defendants bring
error. Affirmed.

*Charles A. Blair*, Attorney General (*Charles W.
McGill* and *E. Stenberg*, of counsel), for appellants.

*Henry K. Gustin* and *Dayton W. Closser*, for ap-
pellee.

HOOKER, J. The plaintiff brought ejectment to recov-
er the possession of certain premises, which he claims to
own in fee simple through one or more quitclaim deeds
from the grantees of the owner of the original title under
a United States patent. The defendants who were in pos-
session at the time that the action was begun occupied
under a certificate issued by the commissioner of the State
land office to him as a homesteader, under the provisions
of the State tax homestead law. They filed a plea of the
general issue, and gave notice of a claim for improve-
ments, whereupon counsel for the plaintiff made a request
for a verdict or finding as to what the value of the
premises would have been had no improvements been made
under the statute permitting it in certain cases. A ver-
dict was directed for the plaintiff, and the jury found the

increased value by reason of defendants' improvements to be $250, and the value of the land, had no improvements been made, to be $300, whereupon the plaintiff recorded his election to abandon the premises to the defendants at the value fixed by the verdict, and judgment was entered for him accordingly for $300 and costs, which judgment was declared to be a lien upon the premises. The defendants have appealed.

The record shows that to establish his case plaintiff introduced: (1) A Federal patent to Peter Livingston, dated July 27, 1885. (2) A quitclaim deed from Peter Livingston to Augusta Larke, dated December 23, 1889. (3) A quitclaim deed from Augusta Larke to the plaintiff, dated June 17, 1902. (4) Oral testimony of the plaintiff that he owned the land; that it was, in his opinion, worth $200; that he knew that defendants Englehardt were living upon the land, and had done so since May 16, 1902; that he had several times conversed with Englehardt, and knew that he held it as a homestead; and also that when he bought the land from Augusta Larke he knew that Englehardt then held it under a homestead certificate. This was all of the plaintiff's proof in making his case.

The defendants then introduced a deed issued by the auditor general, dated September 19, 1896, under the provisions of section 127 of Act No. 206, Pub. Acts 1893, and Act No. 154, Pub. Acts 1895, conveying the premises to the State. Also a tax homestead certificate issued by the commissioner of the State land office to the defendant, authorizing him to enter upon and improve said land, and agreeing to deed the same to him if he should live upon and improve the same as required by law for the period of five years. Also petitions filed by the plaintiff in the original proceedings of the auditor general affecting the lands to set aside the sales and decrees under which the lands were held by the State, and the proceedings taken by the auditor general in deeding them to the State. These petitions were filed February 10, 1903, and attacked the decrees and sales, for the years from 1884 to 1893 in-

clusive. Also the sworn answer of the auditor general and land commissioner, and a record of the proceedings whereby it appeared that " in the above-entitled cause, by consent of parties made in open court, all of said causes are discontinued, without costs." This was a voluntary discontinuance by the plaintiff before hearing of his petitions, and was consented to by the defendant. Evidence was also given of the nature and value of defendants' improvements.

On rebuttal it was admitted that the decrees and sales were void as to all taxes except those for 1892 and 1893. As to these it was shown that the court convened October 8, 1894, and adjourned sine die October 12, 1894. The date set for hearing the auditor general's petition was October 8th, and the decree was made and filed October 12th. The date of hearing in 1895 was October 15th, and the decree was entered October 18th, on which day the court adjourned sine die.

Counsel for the defendants asked the court to charge:

1. That the plaintiff had not made a prima facie case, in that he had offered no testimony tending to show that the lands had not been abandoned by the owner.

2. That the lands had been abandoned by the owner; and that, having been so abandoned, and so found by the examiner, and deeded to the State as such, plaintiff could not now claim any title to them.

The questions before us are:

1. Can title to land pass to the State through abandonment by the owner?

2. Upon whom is the burden of proof as to such abandonment?

3. Has the statute permitting a plaintiff to elect to take a judgment for the value of land to which he may be entitled application to tax homestead lands?

The statute in question is found first in the general tax law of 1893 (section 127, Act No. 206, Pub. Acts 1893), under the head of " Inspection and Disposition of State Tax Lands." 1 Comp. Laws, § 3949, limits the applica-

tion of its provision to lands which (1) have been bid off to the State for a consecutive period of three years, without application made to redeem or purchase the same; (2) have been the subject of a request from the board of the township where situate to be deeded to the State by the auditor general; (3) ascertained by examination and reported to be either barren, swamp, or worthless, and abandoned by the owner. The same section contains the following provision:

"Failure to pay the taxes or to redeem or purchase any lands sold for taxes and bid to the State for more than three consecutive years, as aforesaid, shall be in all cases where such lands are not actually occupied, prima facie evidence that such lands are abandoned by the owner."

All of these things appear in this case. The lands have been bid off for the requisite period, and at the time of the conveyance no application to redeem or purchase had been made. The township board had made the requisite request, and the statutory examination had been made, and the report required had been duly filed showing the lands to be within the statute. This authorized the conveyance to the State as between the departments, and put the lands into the class provided for by the statute, but it did not operate to divest the owner's title. We must hold upon this record that all of the tax sales were void, and conveyed no title to the State,[1] and that, this being so, defendants' claim must stand upon the proposition that the State acquired title through the owner's abandonment of the premises.

We have no occasion to inquire whether it is within the power of the legislature to provide that lands abandoned by the owner shall escheat, or what shall be prima facie or conclusive evidence of abandonment, for we are not convinced that this statute was so intended. The design appears to have been to subject portions of the State's domain to the purpose contemplated, not lands which the

---

[1] See *Bending* v. *Auditor General*, 137 Mich. 500.—REPORTER.

State did not own; and there is nothing justifying an inference that it sought to adopt a new policy as to divestiture of the titles of private persons to that end. We infer from section 3949, 1 Comp. Laws, that it was not the policy of the legislature to subject all State tax lands to this disposition, and it carefully limited them to barren, swamp, or worthless lands. Again, it sought to exclude from the lists lands upon which there was reason to hope that taxes might be paid, or the lands purchased. Hence the inquiry as to abandonment and the provision as to prima facie evidence, which last cannot be received as sufficient evidence to support a State deed, and a title claimed under it, where the title of the State under the tax proceedings, upon which the whole fabric rests, is shown to be without substance. It follows that the court did not err in sustaining the plaintiff's title.

The defendants saw fit to make a claim for improvements, whereupon the plaintiff asked a determination of the value, both of which were found by the jury, and he thereupon elected to take the value, and for this sum the court entered judgment. Section 104 of the tax law (Pub. Acts 1893, Act No. 206) contains provisions allowing purchasers of tax lands to recover for improvements, and gives a lien on the land for them. This may reasonably be held to include homestead purchases. It may be contended that this section gives to defendants holding under tax sales the right to recover for improvements without being subjected to the obligation of taking the land and paying its value, if plaintiff so elect, under 3 Comp. Laws, §§ 10995, 10996, and 10997. In the present case the notice was filed under the latter sections (which apply to all actions of ejectment), as appears from the notice itself. Both parties so treated it, and we do not discover that any question was raised against the application of the general statute at any stage of the trial. Having seen fit to invoke it, the defendants cannot now attack the judgment under it. As to the impropriety of adjudging a lien against the State, it is sufficient to say that the only lien

that the judgment creates is a lien upon the interest of those who are bound by the judgment as parties or privies.

The judgment is affirmed.

The other Justices concurred.