McFARLANE *v.* SIMPSON.

1. Taxation—Tax Sale—Resale—Offer—Evidence.
   On a petition for a writ of assistance by a purchaser from the State under a tax sale, testimony respecting a verbal offer by petitioner to sell the lands to respondent for what they had cost him examined, and *held*, that the offer was not to be left open indefinitely, and that the most that could be said was that respondent might have understood the offer to be open for a reasonable time.

2. Same—Redemption—Notice—Application of Statute.
   Act No. 229, Pub. Acts 1897, providing for a notice of tax purchase to be served on the owner of the lands sold, has no application to sales made by the auditor general prior to the date of the act taking effect.

3. Same—Notice—Effect.
   Where one who purchased under a tax sale, before Act No. 229, Pub. Acts 1897, took effect, served upon the owner of the land the notice required by that act, such notice could not be regarded as a continuing offer to sell, but the most favorable view that can be taken for the owner is that it would not have lain with the purchaser to refuse to accept redemption on the terms stated in the notice, had a tender been made within the time stated; whence a deposit with the county clerk, after the period of redemption stated in the notice had expired, was ineffectual.

4. Same—Opening Decree—Laches.
   Where a landowner knew for nearly seven years that petitioner had bought his land from the State and held a tax deed therefor and claimed title to it, but made no effort to open the decree until the purchaser petitioned for a writ of assistance, though petitioner for two years had been insisting upon payment in full, there is such laches as will preclude an attack upon the decree upon the ground that the auditor general included in his petition lands which had been previously sold and bid in to the State.

Appeal from Ontonagon; Cooper, J. Submitted April 8, 1908. (Docket No. 4.) Decided June 27, 1908.

153 Mich.—13.

Petition by William McFarlane against Alexander T. Simpson for a writ of assistance as purchaser under a tax sale. Respondent filed an answer in the nature of a cross-bill making James B. Bradley, auditor general, a party defendant, and asked to have said sale set aside. From a decree for respondent, petitioner appeals. Reversed, and writ issued.

*Ball & Ball,* for petitioner.

*M. J. Sherwood,* for respondent Simpson.

MONTGOMERY, J. The petitioner presented his petition for a writ of assistance as purchaser from the State under a tax sale for the taxes of 1893. The respondent filed an answer to the petition, which he asked to have treated as a cross-bill, and included in the answer a prayer for relief and made the auditor general a party. Some question has been made as to the propriety of the practice, and there is pending a motion to strike from the files a certificate obtained by the defendant from the circuit judge, which motion is to be determined with the case. Inasmuch as the certificate of the circuit judge, as now construed by the respondent's counsel, is intended to affirm the facts only as they are conceded by the affidavit made by the petitioner, and inasmuch as we would, in any event, before dismissing this proceeding finally, permit an amended return to show the facts as they are stated in the affidavits, we do not find it necessary to grant the motion, but deal with the case on the merits.

The purchase was made by the petitioner from the State of the lands involved on July 13, 1897, the deed being dated October 1, 1897, based on a certificate of purchase given at the date first named. This certificate and deed covered the taxes of 1892 and 1893. The petitioner also paid the taxes of 1894, 1895, and 1896, and later on paid the taxes of 1898. In the spring of 1898, petitioner went to the land on which the respondent was living and asked the respondent to deliver up possession of the land. This

the respondent refused to do. The petitioner at that time made a verbal offer to sell the lands to respondent for what they had cost him. This offer was not then accepted. It is a matter of controversy as to whether the testimony fairly shows a purpose to reject this offer, or whether the respondent had reason to believe that the offer was to be left open indefinitely. We think the most that can be said is that he might have understood the offer to be open for a reasonable time. Nothing occurred between the respondent and the petitioner until April 27, 1903, when the petitioner caused a notice of a tax purchase in the form provided by Act No. 229, Pub. Acts 1897, to be served on respondent. This notice claimed a total amount of $76.82 due for the years 1892 to 1898 exclusive. When this notice was served upon the respondent, he testified that he told the party who served it that he would pay the petitioner all the taxes and expenses less the tax of 1898, for which he held the county treasurer's receipt, and on the 24th of June following, he wrote petitioner:

" I would have sent you check for the same long ago if it had been correct, but you have made a mistake, as I hold county treasurer's roceipt for the taxes for the year 1898, and don't intend to pay them twice. However, I will settle with you for the balance after that amount is deducted out, if you will call in when you are passing by."

There seems to have been no answer to this letter, and respondent then wrote to one Charles O'Rourke, who resides at Ontonagon, the place of residence of the petitioner, and sent him a check and asked him if there was more to pay to make up the balance and settle with the petitioner. This, however, was not done, and no tender was made in fact until the 5th of March, 1905, when the amount covered by the notice was paid into the hands of the county clerk. The testimony of respondent is that when he left the money with O'Rourke he was to make up the difference, whatever was required, in the opinion of Adams, a lawyer of the town, and pay it to petitioner. He also

testified that between the time of the demand in 1903 and the time the money was deposited, Mr. McFarlane never made any demand upon him for the taxes or to give up possession of the land, and that he did not know during that time whether O'Rourke or Adams had redeemed his property from McFarlane or not.

It cannot of course be claimed that there was a tender of the tax within the time fixed by Act No. 229 of the Public Acts of 1897, even if that act should be considered as having application to this case. But, as was held in *Eldridge* v. *Richmond*, 120 Mich. 586, the act does not apply to sales made by the auditor general prior to the date of the act taking effect. It is suggested that this was an offer of sale. We think the most favorable view that could be taken for the respondent is that it would not lie with the petitioner to refuse to accept redemption on the terms stated in the notice had a tender of redemption been made within that time. But this was not done. So that if the respondent is to prevail, it must be upon the ground of irregularity or want of jurisdiction in the original proceedings in the case in which the decree was made.

It is alleged that such irregularity exists, in that the auditor general included in his petition for the sale of taxes for 1893 lands which had been previously sold and bid in to the State. The question at once presents itself as to whether this defense is open at this date, or whether the respondent is guilty of such laches as precludes the court from opening up this sale. The only excuse for the delay in instituting these proceedings that we can find is that which arises out of the effort made through O'Rourke and Adams to adjust this matter. But before the notice of 1903 was served at all, there had been knowledge on the part of the respondent for nearly five years that the petitioner had purchased these lands and claimed title thereto. It is true that there was a proposition to deal liberally with the respondent, but this proposition was not accepted or acted upon by the respondent. Nor during

the period in which he was negotiating with O'Rourke and Adams was there any suggestion of any purpose on the part of the petitioner to compromise his claim or abate it from the amount stated in the notice of April, 1903. Respondent was therefore in no way misled by the attitude of the petitioner in the premises. Nor was he delayed by the negotiations through O'Rourke and Adams in accomplishing any purpose which he had of presenting a petition to open up this decree. So far as the record shows, he had no such purpose. We have then a case in which from 1898 to 1905, a period of nearly seven years, the respondent knew that the petitioner had become the purchaser of this land and held a tax deed therefor and claimed title to it. During a portion of this time, petitioner was willing to adjust on very reasonable terms. During nearly two years of the time he was insisting upon payment in full, and yet no action was taken to open up this decree in all this period. We feel constrained to hold that, under the prior decisions of this court, the respondent was guilty of such laches as precludes his now raising the question. See *Bending* v. *Auditor General*, 137 Mich. 500; *Owens* v. *Auditor General*, 147 Mich. 683.

The decree, which denied petitioner relief and set aside the decree on terms, must be reversed and an order entered that a writ of assistance issue.

The petitioner will recover costs of this appeal.

Blair, Ostrander, Hooker, and Moore, JJ., concurred.