G. F. SANBORN CO. *v.* ALSTON.

1. TAXATION—TAX SALES—NOTICE TO REDEEM—SUFFICIENCY.

A notice of the sale of land for taxes, served on the record owner pursuant to section 140 of the tax law (Act No. 229, Pub. Acts 1897), is not relieved of its invalidity for failing to state the county and State in which the lands are situated, and whether the township and range mentioned are north or south, east or west, by the facts that no town and range of the same numbers exists in any other State or Territory, and only one such in the State of Michigan, since the record owner is not required to search the records of the surveyor general's office in Washington, or the records of other States, to determine whether there is any other like description.

2. SAME—LACHES OF LANDOWNER.

The fact that a landowner has for 15 years given his lands no attention and permitted the State to collect its taxes as best it might is not such laches as will estop him from insisting upon a substantial compliance by a tax purchaser with the provisions of section 140 of the tax law with respect to the notice of purchase.

3. SAME—NOTICE TO REDEEM—WHEN REQUIRED—APPLICATION OF STATUTE.

Act No. 229, Pub. Acts 1897, as amended, requiring tax purchasers to give the record owners the notice therein prescribed, and allowing the owners six months after notice to obtain a reconveyance upon compliance with the specified conditions, applies as well to lands which before the passage of the act had been bid in to the State, and to which the State, as the law then stood, had an indefeasible title, as to lands subsequently bid in.

ON MOTION FOR REHEARING.

1. TAXATION—TAX SALES—REDEMPTION—SUBSEQUENT TAXES.

Where, by reason of a technical defect in the notice to redeem, the record owner is still entitled to a reconveyance from the tax purchaser, notwithstanding the expiration of the statutory period, equity will not lend him its aid to enforce his right unless he reimburses the tax purchaser for the amount paid by him for taxes assessed upon the land subsequent to his tax purchase.

2. EQUITY—MAXIMS.
    He who seeks equity should do equity.

3. MORTGAGES—TAXATION—RIGHTS OF MORTGAGEE—PAYMENT OF
    TAXES.
    A mortgagee is entitled to pay taxes and to have an additional
    lien upon the land therefor, though the mortgage is silent as
    to the payment of taxes.

4. TAXES—PAYMENT—RIGHTS ACQUIRED.
    Where one pays taxes in good faith, claiming title but having
    none, he is entitled to reimbursement out of the land.

Appeal from Houghton; Streeter, J.  Submitted April
13, 1908.  ( Docket No. 60.)  Decided July 1, 1908.
Motion for rehearing submitted September 8, 1908. ( Calendar No. 22,687.)  Former opinion modified September
15, 1908.

Bill by the G. F. Sanborn Company against David M.
Alston, the Worcester Lumber Company, and others, to
quiet title to land, and to enjoin the removal of certain
timber.  Defendants Alston and the Worcester Lumber
Company, Limited, filed an answer in the nature of a
cross-bill to quiet title.  From a decree for complainant,
and dismissing the cross-bill, defendants appeal.  Affirmed.

*Ball & Stone*, for complainant.

*Chadbourne & Rees*, for defendants.

*David M. Alston* (*Thomas Patterson* and *Frank W. Stonecipher*, of counsel), in pro. per.

Complainant owns the patent title to the lands involved
in this suit, which are situated in the counties of Houghton and Baraga.  Defendants own tax titles which were
purchased from the State through the auditor general in
1900 and 1901.  Tax deeds were issued to defendant
Alston, the purchaser.  The tax title owners on January
19, 1903, sold certain of the timber upon these lands to
the defendant Worcester Lumber Company for $36,000,

$27,000 of which was paid at the time of making the contract. That company was making preparations to lumber when this bill was filed to enjoin the cutting of the timber, alleging that the defendants had not complied with Act No. 229, Pub. Acts 1897, in serving proper notice upon the original owners of the amount of taxes due thereon, and thereby affording them an opportunity to obtain a reconveyance. Notices were prepared and served upon the then original owners, and in most cases were served by the sheriffs; in the other case service was made by registered letter and publication.

The total amount of taxes in Houghton county set out in the notice as having been paid by Mr. Alston, in purchase of the tax title, was $648.03, and in Baraga county, $108.50, making a total of $756.53. The objection to the validity of the notices as to the lands is:

(1) That the notices do not state in what State, Territory, or country the lands are situated.

(2) It is claimed that, on certain of the lands in Houghton county, the notices contained an amount in excess of the requirements of the law, and that the total excess amounted to $37.25. It is alleged that in Baraga county the excess was $16.92. Complainant's grantor, through its solicitors, Ball & Stone, deposited with the register in chancery, in order that it might acquire a reconveyance of the lands from the defendants, double the amount paid by Mr. Alston, less the above amount claimed to be in excess of the requirements of the law. Defendant Alston and all claiming an interest in the lands were served with a notice that the money was so deposited for them.

(3) Objection is made to the validity of two of the notices because different parcels of land separately assessed and separately sold were grouped together, and one amount stated as the purchase price of the entire group.

(4) Objection is made that the sheriff's return of service is not evidence of the facts therein set forth, and, there being no other evidence of service, defendants must fail for want of proof of service.

The court held the notices void, under *Tucker* v. *Van Winkle*, 142 Mich. 210, because they failed to state the State, county, or country in which the land was located.

The defendants contend:

(1) That the complainant and its grantors are guilty of such laches as to prohibit relief in a court of equity.

(2) That as to the lands in Houghton county, they were purchased directly from the State when the State held the indefeasible title thereto, and that that title passed to the defendant Alston free from the provisions of Act No. 229, Pub. Acts 1897, and amendments thereof.

(3) That the proofs show that there are no other townships and ranges in any State or Territory numbered to correspond with those in this case.

(4) That the amounts specified in the notices are not in excess of those required by the law.

(5) That the return of the sheriff is competent evidence of the service of the notice.

GRANT, C. J. (*after stating the facts*). 1. The description in the notices in this case is the same as those in *Tucker* v. *Van Winkle*, 142 Mich. 210, except that in that case the town was described as north and the range as west, while in this case the notices failed to state whether the township was north or south, or the range east or west, and are therefore more indefinite than the description in that case. This itself, however, would be immaterial to one versed in the governmental surveys, for there is no other township or range in the State than those described in the notice. This case is ruled by *Tucker* v. *Van Winkle*, unless we are enabled to say that there are no other like descriptions of land in any of the States or Territories, and that the original owners are chargeable with knowledge of that fact. Parties are presumed to know the law, and ignorance of it is no excuse. This rule, however, does not apply to the existence or nonexistence of things which may appear upon some public records or may be shown by extrinsic evidence. This question is not to be determined as if this were a contract or deed between two parties where the intention

is of importance and often determinative of the result. Undoubtedly, if the case of *Tucker* v. *Van Winkle* had been between parties where one had given a deed to the other, it would have been entirely competent to show by extrinsic evidence what land was intended. In tax cases the owner has no intent to be considered. He is proceeded against ex parte. There is no intention on his part upon which extrinsic evidence may throw light or to which operation can be given. *Jones* v. *Pelham*, 84 Ala. 208; *Jackson* v. *Sloman*, 117 Mich. 126. The average layman is unversed in surveys and could have no knowledge that there was no like description in any other State or Territory. The notice which the original owners in this case received did not specify the State or county where the lands were located. As we held in *Tucker* v. *Van Winkle*, they might well have assumed that there were similar descriptions of land in other States where similar methods of survey were followed. The law does not require them to search the records in the surveyor general's office at Washington, or the records of other States, to determine whether there is any other like description. It is the universal custom in conveying lands in this State to describe the county and State, giving also the township and range. To hold with the defendants would be to overrule *Tucker* v. *Van Winkle*. That case has been regarded for two years and a half as the law of the State, and we are not disposed to overrule it. It follows that these notices were void on their face.

2. It is urged that the grantors of the original complainant have shown such laches as to preclude relief. Counsel state their position as follows:

"For 15 years the former owners have given them no attention and have permitted the State of Michigan to collect its taxes as best it might. They have known that through all this period the taxes have gone delinquent, or someone else has paid them."

Counsel cite, in support of their contention, the language of this court in *Cook* v. *Hall*, 123 Mich. 378. The provisions of the act of 1897, requiring notice to the origi-

nal owner, and giving him the right to a reconveyance upon compliance with the terms of the notice, was not involved in that case. The facts there are not the parallel of those in this, except in the fact that both neglected to pay their taxes. In that case, the original owner, knowing that his lands had been sold, that the defendants had become the purchasers of the timber, and that it had been cut and manufactured, then sought to obtain the benefit of the labor and expenditures of the defendants. In this case the plaintiff, representing the original owners, took prompt action to prevent the cutting of timber, and to prevent the tax purchasers and their grantees from enforcing any rights under their tax deeds. The act of 1897 was not designed to assist only those who had been diligent and free from fault. The failure to pay taxes is, in most cases, the result of negligence and involves laches. The statute covers all cases where the purchaser has acquired the tax title at the public sales or by purchase of the title acquired by the State. It was regarded as sufficient punishment to the original owner and sufficient compensation to the tax purchaser to require the owner to pay double the amount which the purchaser paid and certain other items. To sustain this contention on behalf of the defendants would result in rendering the act of 1897 inapplicable to a great majority of tax titles. It may well be conceded that the complainant in this case, which stands in the shoes of the original owners, does not deserve any consideration in a forum of equity. Courts of equity, however, as well as of law, must apply legislative enactments in accordance with the plain intent and language used by the legislature. The requirements of the act are not difficult to understand, and compliance therewith is easy. He who relies upon the notices required by the statute must show a substantial compliance therewith, regardless of any fault or laches of the original owner. Had the complainant or its grantors stood by in silence and permitted defendants to proceed to cut the timber, the case of *Cook* v. *Hall* would probably be applicable.

3. It is urged that the lands situated in Houghton county were purchased directly from the State at a time when the State held the indefeasible ownership therein, and that therefore defendant Alston took title free and clear of any right conferred by the act of 1897. The language of that act (Act No. 229, Pub. Acts 1897, § 142), is as follows:

"No purchaser under any tax sale hereafter made, or of any State tax land or any State bid hereafter sold, shall enter into possession of the land so purchased until six months after he has given notice to the party or parties in interest as provided for in the preceding sections unless he shall have acquired from said parties their title thereto under conveyance from said party or parties of his or their interest in said lands."

Section 140, as amended by Act No. 204, Pub. Acts 1899, provides:

"No writ of assistance    *    *    *    for the possession of any land, the title to which has been obtained under and in pursuance of any tax sale, made after the 29th day of August, A. D. 1897; or of any sale of State lands or State bids made after the said 29th day of August, 1897, *    *    *    shall be issued until six months" after the notice has been served and proof thereof filed.

The title to many thousands of acres of land was in the State at the time the act of 1897 was passed. The title to many other thousands has since been acquired by the State. We think it was clearly the intention of the legislature to give to all the original owners of land the right conferred by the act of 1897, viz., to obtain a reconveyance of their land thereafter purchased, whether from the State directly or at tax sales, by paying the tax-title purchasers the amounts provided thereby. Such, we think, has been the understanding of the profession. Many cases have been before the courts where the title has been acquired from the State in the same manner as that acquired by the defendant Alston, and no question has before been raised as to the right to the benefit of the act.

The decree is affirmed, without costs to the complain-

ant.  Landowners who neglect the payment of their taxes should not receive costs when litigation has arisen through their own neglect.

BLAIR, MONTGOMERY, CARPENTER, and McALVAY, JJ., concurred.

### ON MOTION FOR REHEARING.

GRANT, C. J.  A motion for a rehearing is made in this case, asking for the determination of the liability of the complainant for taxes paid by the defendant Alston for four years subsequent to the service of the notice which we held to be invalid.  We did not determine this question in the former opinion, for the reason that it was not essential to a determination of the case.  Upon reflection, we are of the opinion that the parties are entitled to have all their rights determined in this case; and, inasmuch as the question was fully discussed in the original briefs, upon the oral argument, and now upon the motion for a rehearing, we conclude to dispose of it.

As we have repeatedly held, the original owners of land know that their lands are subject to taxation, and that it is their duty to pay the taxes imposed upon them and thus bear their share of public burdens.  The owners of the land in dispute not only paid no taxes, but after the notice was served upon them under the statute notifying them that a sale of the lands had been lawfully made, and that Alston had title thereto, and that they were entitled to a reconveyance upon payment of the sums specified in the notice, still paid no attention to the payment of their taxes or exhibited any desire to protect their interests.  They made no attempt to pay either the defendant Alston in accordance with the notice, or the subsequent taxes.  They were paid by Alston.  It was necessary that they should be paid to protect his title, the validity of which is not questioned.  By a technical defect in the notice the complainant (the grantee of the original owners) is still entitled to a reconveyance from the defendant.  Is it equitable that complainant should be relieved

from the payment of these subsequent taxes? Clearly not. Can a court of equity compel complainant to do equity by reimbursing the defendant Alston for these subsequent taxes? It seeks equity and ought to do equity. The law (section 3876, 1 Comp. Laws) provides:

"Any person having a lien on property may, after thirty days from the time the tax is payable, pay the taxes thereon, and the same may be added to his lien, and recovered with the rate of interest borne by the lien."

The name given to the title acquired by the tax purchaser under the provisions of the law is immaterial. Whether we call the title absolute or conditional, he has a title which it is his right to protect by payment of subsequent taxes, and, when the original owner demands a reconveyance from him, he ought in justice and equity to be compelled to pay those taxes which the purchaser has been compelled to pay, or otherwise lose his title or lien. A mortgagee is entitled to pay taxes and to have an additional lien upon the land therefor, although the mortgage is silent as to the payment of taxes. *Sidenburg* v. *Ely*, 90 N. Y. 262; 2 Jones on Mortgages (6th Ed.), § 1080; 3 Pomeroy on Equity Jurisprudence (3d Ed.), § 1217.

It is also held that where a party pays the taxes in good faith, claiming title but having none, he is entitled to a reimbursement out of the land. *Kemp* v. *Cossart*, 47 Ark. 62; *Goodnow* v. *Moulton*, 51 Iowa, 555. The payment of the subsequent taxes, amounting to $573.37, inured to the benefit of the original owners. The complainant (representing the original grantors), not the defendant Alston, is demanding "the pound of flesh." Equity will not give it. Defendant Alston is entitled to be reimbursed for these taxes, with interest from the dates of payment.

The decree will be modified in accordance with this opinion.

BLAIR, MONTGOMERY, CARPENTER, and McALVAY, JJ., concurred.