McQUILLAN *v.* AYER.

1. TRUSTS—VALIDITY—EXPRESS TRUST.

An express trust can be created only in the manner prescribed by the statutes of this State and may be created for the beneficial interest of any person or persons when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the statute limitations as to time. 3 Comp. Laws, §§ 8839, 8844, 8845, 8848.

2. SAME—DEEDS.

A purchaser from a trustee takes not only the legal title, but the beneficial title as well, when the conveyance is made rightfully and under the terms of the trust, or if made wrongfully, when the purchaser is ignorant of the violation of the trust.

3. SAME—GOOD FAITH—EQUITABLE TITLE.

A conveyance by the trustee ordinarily effects a complete transfer of the beneficial as well as the legal estate, and while the grantee is charged with notice of the limitations of the trustee's title, as contained in the instrument creating it, or of such limitations as may be actually known to him, there is no doubt that, under the statutes of this State, the trustee, under a deed that only describes him as trustee, can convey to one ignorant of the terms of the trust an absolute title both legal and equitable.

4. SAME—CONTRIBUTION—EQUITY—TAXES PAID.

Since he who seeks equity must do equity, a defendant who asks affirmative relief may be required to reimburse a complainant for taxes which the complainant was compelled in good faith to pay to protect her interest under a tax title purchase, though the tax title was void.

5. SAME—VOID TAX TITLE—REPAYMENT.

And the defendant was erroneously relieved of liability for taxes paid by the complainant before the date of his title deed, and during the seizin of his grantors.

Appeal from Ontonagon; Cooper, J. Submitted October 8, 1915. (Docket No. 24.) Decided December 22, 1915.

Bill by Annie McQuillan against Frederick Ayer for an accounting, contribution, etc. From a decree for complainant for partial relief she appeals. Modified.

*A. E. Miller* and *John E. Tracy,* for complainant.

*M. J. Sherwood,* for defendant.

On August 14, 1875, one Edmund M. Spalding located certain lands in Ontonagon county. In doing so he seems to have acted as trustee for himself and nine others, among whom was Dr. James McQuillan. Dr. McQuillan disposed of one-half of his interest to Felix O'Hegan, and Spalding issued to McQuillan and O'Hegan declarations of trust in the following language:

"Marquette, Aug. 24, 1875. This is to certify that Dr. James McQuillan is entitled to a one-twentieth (1/20) undivided interest in the following described lands, located in my name as trustee: S. E. 1/4 of S. E. 1/4 Sec. 9 & S. E. 1/4 & S. 1/2 of S. W. 1/4 Sec. 10 & S. 1/2 of S. W. 1/4 & S. W. 1/4 of S. E. 1/4 Sec. 11, township 50 N. of range 42 W., situated in Ontonagon county, State of Michigan, located Aug. 14, 1875. Edmund M. Spalding, Trustee."

The land was patented to "Edmund M. Spalding, trustee." It appears that Spalding, as trustee, never paid any taxes upon the property. The lands were sold for taxes for the years 1877 to 1881 to one James McCarthy, who purchased at the request of McQuillan, and later conveyed his interest to McQuillan. McQuillan purchased directly for the taxes of 1882 and 1883, and he or his assigns have continued to pay the taxes on the entire property from that time down to and including the year 1913. Complainant through mesne conveyance became the owner of the McQuillan interest in 1897. The O'Hegan interest passed to James

McQuillan in 1910 by devise, and was by him conveyed to complainant in 1913. The complainant, therefore, at the time of the filing of her bill, was the owner of an undivided one-tenth interest in said lands, according to the declarations of trust executed by Spalding. In the year 1899 Spalding executed a quitclaim deed covering the S. E. quarter of the S. E. quarter of section 9 to M. E. Asire. This deed was signed by Spalding as an individual. In 1902 Spalding conveyed the balance of the land by warranty deed to William O. Butler, signing the deed as an individual and as "Edmund M. Spalding, Trustee." Later, and in 1902, Butler acquired Asire's title to the 40 acres which had been conveyed to Asire by Spalding. In the same year, 1902, Butler, by warranty deed, conveyed all of said lands to defendant.

Complainant's bill is filed for the purpose of compelling defendant to convey to her the legal title to a one-tenth interest in said lands, and, further, to require defendant to repay to her nine-tenths of the taxes which she or her grantors have paid since 1885, together with interest thereon. She further prays for an injunction restraining the prosecution of a suit at law. To this bill of complaint defendant filed an answer by way of cross-bill seeking a decree to the effect that he be declared to be the sole owner in fee of all of said lands, and that complainant and all others claiming through or under her be enjoined from setting up any claim to said lands or any portion thereof. The record fails to disclose that either the defendant or his grantors, or any one of them, made any inquiry as to the nature of the trust under which Edmund M. Spalding located and held the lands in question. Complainant claims no title to the lands by virtue of the tax deeds, but insists upon her equitable right to be reimbursed for her expenditures in that regard to the extent of nine-tenths of the amount thereof, with in-

terest thereon.  Upon the hearing a decree was entered quieting the title to the lands in question in the defendant, upon condition that he cause to be deposited with the registrar in chancery the amount of the taxes paid by complainant or her grantors subsequent to the date defendant acquired title.    Defendant complied with this decree, and complainant has appealed.

BROOKE, C. J. (*after stating the facts*).  Broadly, it is the claim of the complainant that the use of the word "trustee" after the name Edmund M. Spalding, in the patent to him from the government, was sufficient to put an intending purchaser upon inquiry as to the nature of the trust under which said lands were held by Spalding, and that the defendant, having failed to show that either he or his grantors made any such inquiry, should be held to hold said lands as to the one-tenth owned by complainant under the trust as they were held by Spalding.  A large number of authorities are cited in support of this proposition, including the case of *Geyser-Marion Gold Mining Co.* v. *Stark*, 106 Fed. 558 (45 C. C. A. 467, 53 L. R. A. 684).  With reference to these authorities it may be said that they measurably support the contention of the complainant. We think, however, that the question in issue is disposed of by a consideration of our own statutes and decisions.    Under the statutes of this State an express trust can be created only in the manner prescribed by statute.    Such a trust may be created for the "beneficial interest of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations as to time prescribed in this title."    Subdivision 5, § 8839, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10679).

Section 8844, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10684), provides:

"Every express trust, valid as such in its creation, except as herein otherwise provided, shall vest the whole estate in the trustees, in law and in equity, subject only to the execution of the trust; and the person for whose benefit the trust was created, shall take no estate or interest in the lands, but may enforce the performance of the trust in equity."

Section 8845, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10685), is as follows:

"The preceding section shall not prevent any person creating a trust from declaring to whom the lands to which the trust relates shall belong, in the event of the failure or termination of the trust, nor shall it prevent him from granting or devising such lands, subject to the execution of the trust; and every such grantee shall have a legal estate in the lands, as against all persons except the trustees and those lawfully claiming under them."

Section 8848, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10688), provides:

"When an express trust is created, but is not contained or declared in the conveyance to the trustees, such conveyance shall be deemed absolute as against the subsequent creditors of the trustees, not having notice of the trust, and as against purchasers from such trustees, without notice, and for a valuable consideration."

We think it clear that under the law of this State a purchaser from a trustee takes, not only the legal title, but the beneficial title as well, when the sale by the trustee is made rightfully and under the terms of the trust, or, if made wrongfully, when the purchaser is ignorant of the violation of the trust. 39 Cyc. p. 374, and cases cited.

A conveyance by the trustee ordinarily effects a complete transfer of the beneficial as well as the legal estate. *Thatcher* v. *St. Andrew's Church*, 37 Mich. 264. While it is clear that one purchasing from a

trustee is bound to take note of the limitations of the trustee's title, as contained in the instrument creating the trust, or of such limitations as may be actually known to him, there is no doubt that under our statues, where the deed runs to one as a naked trustee, said trustee can convey to one ignorant of the terms of the trust an absolute title both legal and equitable. In the case at bar the only notice to the defendant or his grantors of the fact that others than Spalding were interested in the lands was contained in the use of the word "trustee" in the granting clause in the patent.

The declaration of trust upon which complainant relies was unrecorded, and the record is barren of proof that either defendant or his grantors had any actual notice thereof, nor does the record show that in disposing of the lands Spalding was, in fact, guilty of any breach of trust. For aught that appears, he may have had the right under the terms of his trust to dispose of the lands held by him; he to account for the proceeds thereof to those interested with him in the lands.

Counsel for complainant say:

"If complainant has any rights in the property under her trust certificate, she is entitled to contribution for taxes paid, under the doctrine of liability of one cotenant to another. If she has no rights under such certificate, she is nevertheless entitled to reimbursement under the doctrine of liability of the owner of property to one who has paid the taxes in good faith claiming title. Under the first doctrine the contribution should be nine-tenths of the taxes paid. Under the second doctrine the reimbursement should be of the whole amount."

It will be remembered that the learned circuit judge held that complainant had no rights in the property itself by virtue of the trust certificate, and with this holding we agree. He held, however, that the defendant should pay the taxes paid by the complainant since

defendant acquired title to the lands. Exactly upon what theory the defendant was held chargeable with taxes paid after he acquired title, and relieved from the payment of those paid while the title was in his grantors, the record does not disclose. Defendant is in a court of equity asking affirmative relief against complainant. In our opinion, the maxim, "He who seeks equity must do equity," is here applicable. There can be no doubt that the payment of the taxes by complainant and her grantors from the year 1887 down inured to the benefit of the estate now owned by the defendant. The fact that those taxes were paid by the complainant and her grantors, not as cotenant, but in reliance upon void tax titles, does not, in our opinion, affect the equities. In the case of *Sanborn Co.* v. *Alston*, 153 Mich. 456 (116 N. W. 1099), this court said:

"The name given to the title acquired by the tax purchaser under the provisions of the law is immaterial. Whether we call the title absolute or conditional, he has a title which it is his right to protect by payment of subsequent taxes, and, when the original owner demands a reconveyance from him, he ought in justice and equity to be compelled to pay those taxes which the purchaser has been compelled to pay, or otherwise lose his title or lien. * * * It is also held that, where a party pays the taxes in good faith, claiming title, but having none, he is entitled to a reimbursement out of the land. *Kemp* v. *Cossart*, 47 Ark. 62 [14 S. W. 465]; *Goodnow* v. *Moulton*, 51 Iowa, 555 [2 N. W. 395]."

The stipulation contained in the record fixes the amount of taxes paid by the complainant or her grantors, together with interest thereon, at the sum of $1,-729.30. Under the authority of *Sanborn Co.* v. *Alston, supra,* we are of opinion that the decree should be amended, compelling defendant to pay this amount,

instead of the sum of $934.90, fixed by the court be-
low.

With this .modification, the decree is affirmed, with
costs to appellant.

PERSON, KUHN, STONE, OSTRANDER, BIRD, MOORE,
and STEERE, JJ., concurred.