HEETHUIS *v.* KERR.

1. TAXATION—JUDGMENT—COLLATERAL ATTACK—QUIETING TITLE—
DESCRIPTION.
   Where a decree of the circuit court established the validity
   of a certain tax, a deed based thereon could not be at-
   tacked collaterally, in a suit to quiet title, because of a
   change in the description of the premises authorized by
   Act No. 271, Local Acts 1903.

2. DEEDS—CONSTRUCTION—RESERVATION OF ALLEY.
   Where a deed reserved "12 feet in rear of said lot for a
   public alley," and there was no evidence of any use as
   a public alley, the language in the deed being taken most
   strongly against the grantor, *held*, that no interest in the
   premises except, perhaps, as one of the public, was in-
   tended to be retained by the grantor.

3. TAXATION—NOTICE TO REDEEM—PROCESS—RETURN—SUBSTITUTED
SERVICE.
   Section 140 of the tax law (1 Comp. Laws, § 3959, 1 Comp.
   Laws 1915, § 4138) providing for personal notice if possi-
   ble to the original landowner, and, if not, by substituted
   service by publication for four successive weeks, and sec-
   tion 141 (1 Comp. Laws, § 3960, 1 Comp. Laws 1915, §
   4139) providing that the landowner may redeem within
   six months after service of such notice, being construed
   together, *held*, that while the personal service provided
   for was not complete until the sheriff's return was made
   and filed, there is no good reason for holding that the
   sheriff must both make and file his return before pro-
   ceeding with the substituted service by publication.[1]

4. SAME—PUBLICATION—REDEMPTION— DESCRIPTION — SUFFICIENCY
OF NOTICE.
   Where the notice to redeem from the tax sale was pub-
   lished in a newspaper published and circulating in Mus-
   kegon county, Mich., described the land as "Lot 1, block
   264, of the city of Muskegon, according to the revised map

[1]On who is entitled to notice to reedem from tax sale, see
extensive note in 44 L. R. A. (N. S.) 666.
   194—Mich.—44.

of said city, approved April 9, 1903, and recorded in the office of the register of deeds for Muskegon county," gave the business address of the person giving the notice as "Muskegon, Mich." and was addressed to the proper persons, *held*, a sufficient notice to advise interested persons of the county and State within which the land was located.

5. SAME—REDEMPTION—SUFFICIENCY OF NOTICE—TEST.
   The test of the sufficiency of such notice is whether, any of the persons to whom it was addressed, reading it, would be sufficiently advised of all the facts which the statute requires the tax title holder to make known to them.

6. SAME—REDEMPTION — PERSONAL SERVICE — CAREFUL INQUIRY — CONTRADICTING RETURN.
   The sheriff's return that he made careful inquiry to discover the whereabouts of the owner of the land before making notice by publication, is not jurisdictional, and was therefore open to question.

7. SAME—EVIDENCE—DILIGENCE OF OFFICER.
   It not being required that every possible source of information shall be examined by the officer seeking to learn the whereabouts of the landowner, evidence examined, and, *held*, to show a reasonable effort to discover his whereabouts.

8. SAME — REDEMPTION — NOTICE BY REGISTERED MAIL — ANSWER —CHANCERY RULE.
   Where complainant in his bill alleged service of notice by registered letter, and defendant in his answer did not explicitly deny said service, or allege want of knowledge sufficient to form a belief, as required by Chancery Rule 10, subd. *d*, complainant was warranted in relying upon the answer.

9. SAME—TAX DEED—VALIDITY OF PROCEEDINGS TO PERFECT TITLE.
   In a suit to quiet title to land acquired by tax deed from the auditor general, where complainant had perfected his title and right to possession by performance of the conditions upon which he took his deed, he was entitled to a decree.

Appeal from Muskegon; Sullivan, J. Submitted October 25, 1916. (Docket No. 87.) Decided March 29, 1917.

Bill by Jacob E. Heethuis against William F. Kerr, Charles W. Kerr and others to quiet title to certain real property. Glenn M. Porter and William A. Wyman were later substituted for defendants Kerr and allowed to file an answer and cross-bill. From a decree for plaintiff, defendants bring case-made. Affirmed.

*McFarlan & Wilson,* for appellants.

*Cross, Vanderwerp, Foote & Ross,* for appellee.

OSTRANDER, J.  The bill in this cause was filed January 4, 1912, to quiet title to certain premises in the city of Muskegon, Mich.  The parties made defendants were William F. and Charles W. Kerr, the National Savings & Loans Association, John F. Breden and Antha D. Keys.  It is charged in the bill that on May 1, 1906, complainant was purchaser at the regular tax sale held in Muskegon of premises described as lot 1, block 264, of the revised plat of the city of Muskegon, for the taxes of the year 1903, that said premises are also known as lot 1, block 46, of Sanford's addition to the village (now city) of Muskegon; that the land was not redeemed from said tax sale and the auditor general issued to complainant a tax deed therefor, dated May 18, 1907.

It is charged that notices, as required by law, were given of the said purchase and of the right to redeem therefrom, the manner of making service being set out, and that the said giving of notice was complete November 29, 1907, six months from which date, no redemption having been made, complainant entered into possession of the premises, remained there in peaceable occupancy of them, paid the taxes for the years 1904 to 1910, inclusive, and erected a dwelling house thereon.  Defendants Kerr are made defendants because they are grantees in a recorded deed of the

premises, dated May 17, 1889, the loan association because it is a mortgagee in a mortgage of record, dated February 28, 1894; defendant William F. Kerr appears of record to be also a mortgagee in a mortgage dated January 4, 1894; John F. Breden is a grantee in a deed dated November 13, 1883. It is charged that defendant Antha D. Keys is grantee of the premises in a tax deed executed by the auditor general May 26, 1905, for taxes for the year 1901, said deed being recorded April 14, 1909, and she is grantee in another deed of the premises executed by the auditor general May 14, 1906, for taxes for the year 1902, the deed being recorded April 14, 1909. It is further charged that, as appears of record, said Keys gave notice, as required by law, of her said tax deeds and of the right to acquire her title to the defendants Kerr and the National Savings & Loan Association; proof of service of said notice being recorded. Complainant charges that the said several deeds, other than his own, mortgages and record of service of notice by said Keys, constitute a cloud upon the title to said premises and upon complainant's title, and prays for a decree quieting his title and for general relief. Antha D. Keys answered the bill, there was a hearing and a decree, made November 2, 1912, favorable to complainant, an appeal by Keys, and an affirmance of the decree by this court June 1, 1914. 180 Mich. 520 (147 N. W. 584).

Certain alleged infirmities in the giving of notice of redemption by complainant were relied upon by the appellant, and it was held, by a majority of the justices, that the appellant could not have any advantage of said alleged irregularities because she was not of the class entitled to notice, distinguishing *White* v. *Shaw*, 150 Mich. 270 (114 N. W. 210). Defendants Kerr were not personally served with process, but were brought in by publication, and after the said affirmance of said decree, and with knowledge thereof,

defendants Porter and Wyman looked up the Kerrs for the purpose of buying, and did buy, for about $35, the interest of the Kerrs in the premises, receiving quitclaim deeds thereof, and were admitted to answer and defend in the place of the said Kerrs, an order being entered July 26, 1915, setting aside the former decree as to the Kerrs.

The joint answer of these substituted defendants prays for affirmative relief, and, with the bill and testimony, which was taken in open court, presents the issues, determined in the court below in favor of complainant. They appeal, and contend in this court:

*First,* that the description of the land in the tax roll and tax deed issued to complainant invalidates the tax.

*Second,* that no notice to redeem or of the right to redeem was served upon the owner of a portion of the lot described in one deed as a reservation for a public alley.

*Third,* that before publication of a notice to bind defendant Charles W. Kerr in place of personal service upon him, the return of the officer that said Charles W. Kerr could not be found should have actually been filed in the clerk's office.

*Fourth,* that the description of the premises in the published notice was insufficient.

*Fifth,* that there was fraud in not procuring personal service upon said Charles W. Kerr and in substituting therefor a notice or service by publication.

*Sixth,* that there is no proper evidence of service of the notice to redeem upon defendant William F. Kerr.

*Seventh,* the effect of the former decree is discussed, with the claim that appellants have redeemed from the Keys tax titles.

*Eighth,* the general equities are somewhat discussed.

The force and effect of these various contentions must be considered, and a considerable reference to the record is necessary.

*First.* By Act No. 271, Local Acts 1903, approved

February 11, 1903, and given immediate effect, it was provided that after the adoption and approval of a certain plat (map) by the common council of the city of Muskegon, it should be the authentic and legal map of the city and stand in the place of all plats of territory included therein and used by the assessing officers in making assessments for and levying taxes. The approval of the city council was given April 9, 1903. The second Monday in April, 1903, fell upon April 13th, and then and ever since property has been listed for taxation and described in tax proceedings in accordance with this revised plat. The property in question is so described as lot 1, block 264, although theretofore it had been known and described as lot 1 of block 46 of Sanford's addition. An index, conforming with said legislative enactment, filed with the register of deeds of the county and in other public places, showed the descriptions of property appearing on the last preceding assessment roll and opposite to each a description according to the said revised plat. It is said in argument that, there being no provision elsewhere in the act that landowners should be given notice of the changes in the descriptions of their property, there was no notice, actual or constructive, of the change in name (description) of this property, and the act is unconstitutional in so far "as it attempts to change the names of lots for the purposes of taxation without notice to the owner." It is said, further, that the lawful description of the piece of property is a property right belonging to the property and inseparable from it, without notice to the owner, and counsel refers to *Lewis* v. *Monson,* 151 U. S. 545 (14 Sup. Ct. 424). That was a case arising in the State of Mississippi, controlled by the local law, which was followed by the Supreme Court of the United States and presented the case of an owner of property attempting to pay his taxes upon all the property

which he owned, but failing to do so because, pursuant to a legislative enactment, a new map, subdividing a township, had been purchased, according to which, without knowledge of the owner, the assessor changed descriptions to conform to those in the new map, in consequence of which the owner failed to pay upon one parcel of his land. There is no evidence that the owners of the land in question here ever sought to pay the taxes for the year 1903 or any subsequent year, so that no question of equity as between the owners and the public is involved. Beyond this, there is no question but that the land described in the tax roll for 1903 is the land formerly described as lot 1, block 46, Sanford's addition. But a complete answer to the suggestion may be made by saying that in this proceeding, and the basis for the issuing of the tax deed to complainant by the auditor general, there is a decree of the circuit court, in chancery, for the county of Muskegon, determining the validity of the particular tax, a decree which cannot be and is not sought to be opened in this proceeding.

*Second.* It appears in the chain of title that under date November 4, 1902, one Charles F. Latimer and wife conveyed the premises to Alice Macauley, the said deed excepting out of the description 12 feet in the rear for a public alley. The map to which reference has already been made shows no public alley there. The precise description in the deed is said to be:

"Lot 1, block 46, Sanford's addition, city of Muskegon, 12 feet reserved in rear of said lot for a public alley."

No evidence is pointed out of any use of this 12 feet as a public alley, and no reason is assigned for holding that the deed did not pass the fee to lot 1, block 46. I do not find the deed printed in the record, so that all of its terms and conditions are not before us, but

upon what appears it is as reasonable to construe the intent of the grantor to be to convey the fee to the entire lot as to construe it otherwise. In *Bolio* v. *Marvin,* 130 Mich. 82 (89 N. W. 563), the clause following the descriptive part of the deed was:

"Saving and preserving, however, from the operation hereof, the road running along the southerly line of said parcels from the said Saginaw turnpike, and the road in the rear or westerly side of said first-described tract."

The action was ejectment, the successor to the grantee in the deed having fenced in the highway. A judgment having been directed for defendant, this court said that the grant was broad enough to cover the land included in this road; there being not the slightest occasion to include the land in the deed unless some interest was intended to be vested in the grantee. From the evidence presented, the language in the deed being taken most strongly against the grantor, I think we ought not to hold that any interest in the premises except, perhaps, an interest as one of the public was intended to be retained by the grantor Latimer.

*Third.* The statute (section 140 of the tax law [1 Comp. Laws, § 3959, 1 Comp. Laws 1915, § 4138]) provides that if the sheriff of the county where any such lands are located shall make a return that after a careful inquiry he is unable to ascertain the whereabouts or the post office address of the grantee named in the last recorded deed or deeds, then such notice as is therein provided for shall be published for four successive weeks in some newspaper published and circulating in the county where such lands are located.

The argument made for appellants is that the sheriff must not only *make* a return, but file it before publication of the notice can be begun. Section 141 of the tax law (1 Comp. Laws, § 3960, 1 Comp. Laws 1915, § 4139) provides that the original owner of the prop-

erty shall be entitled to receive a conveyance from the tax purchaser at any time within six months after service of the notice. In *Pike* v. *Richardson,* 136 Mich. 414 (99 N. W. 398), it was determined that these two sections of the law should be construed together, the legislative intent being that the two periods should be coterminous, and that when personal service is referred to in section 141, a service completed by the filing of a return was intended, the statute being thus liberally construed in favor of the redemptioner. It is contended that this amounted to a holding that the word "return" in section 140 means return and filing, as if the statute read that if the sheriff of the county where any such lands are located shall make and file a return that after careful inquiry, etc. What the legislature undertook to provide for was a notice to owners and mortgagees of land by personal service, if personal service is possible, by publication if personal service cannot be had. The sheriff charged with service of the notice having made careful inquiry and being unable to ascertain the whereabouts or post office address of any one entitled to notice, and having evidenced the fact in writing in the form of a return, no purpose could be subserved by delaying at all the making of the permitted substituted service. No good reason is suggested for holding that he must both make and file his return before proceeding with the publication of the notice, nor does *Pike* v. *Richardson, supra,* determine that the word "return" in section 140 means "return and file." See, generally, *Williams* v. *Olson,* 141 Mich. 580 (104 N. W. 1101).

*Fourth.* Recurring again to section 140 of the tax law and the provision reading: "Then such notice as is herein provided for shall be published," it is contended that the notice which was published was not the one *herein provided for* because not giving the county and State within which the land is located.

The notice which was published reads in part as follows:

"Description of Land: Lot 1, block 264, of the city of Muskegon, according to the revised map of said city, approved April 9, 1903, and recorded in the office of the register of deeds for Muskegon county, October 7, 1903. Amount paid $41.33, taxes for the year 1903. Amount necessary to redeem $87.66 plus the fees of the sheriff.    JACOB HEETHUIS.

"Place of business, 237 Pine Street, Muskegon, Mich."

The entire notice, which in other respects conforms with the statute, was published in the Whitehall Forum, a weekly newspaper printed and circulating in the county of Muskegon. In *Tucker* v. *Van Winkle,* 142 Mich. 210 (105 N. W. 607), the notice was held to be defective in the description of the land because the county and State were omitted. It was said:

"If the name of the State appeared, the township and range, which are given, would serve to define the land. As it is, the notice fails to show whether the lands are in Michigan or in any one of the many other States, where similar methods of survey have been followed. While the case cited [*Williams* v. *Olson,* 141 Mich. 580 (104 N. W. 1101)] indicates that the statute is not to be construed and enforced technically, we are of the opinion that it should furnish means of identifying the land."

In *Curry* v. *Larke,* 153 Mich. 348 (116 N. W. 1075), it appeared that neither the State nor county was given in the description in the body of the notice. It was held, following *Tucker* v. *Van Winkle,* to be defective, although there was printed on the backs of the notices served the words, "State of Michigan, County of ――――," and in the blank space was written, "Presque Isle." It was held that the indorsements on the notices were no part of the statutory notice. In *G. F. Sanborn Co.* v. *Alston,* 153 Mich. 456 (116 N. W. 1099), the description of land in the no-

tices was like that in *Tucker* v. *Van Winkle,* except that in that case the town was described as north and the range as west, while in the notices in question there was a failure to state whether the township was north or south or the range east or west. It appeared, however, that there is no other township or range in the State other than the one described in the notice. But the notices were held to be bad. *Morrison* v. *Semer,* 164 Mich. 208 (129 N. W. 1), and *McRae* v. *Barber,* 167 Mich. 314 (133 N. W. 12), presented facts like those in *Tucker* v. *Van Winkle,* and that case was followed.

In the case at bar, we have a description which gives the city in which the land is situated, with a recital in the notice that a revised map, according to which a description is made, is recorded in the office of the register of deeds for Muskegon county. The business address of the person who gives the notice, the tax title holder, is stated as being "Muskegon, Mich.," and the notice is published in a newspaper published and circulating in Muskegon county, Mich. It would seem as if any one reading the notice would be sufficiently advised that the land about which the notices were given was situated in the city of Muskegon, in Muskegon county, in the State of Michigan. In addition to this, the notice was addressed to certain persons, and they were proper persons, who may be supposed to have possessed some knowledge upon the subject of where lands they claimed to own were situated.

The test must be, I think, in the case where such a notice is published in a newspaper, whether any of the persons to whom it is addressed, reading it, would be sufficiently advised of all facts which the statute requires the tax title holder to make known to them, and, so tested, this notice as published was, in my opinion, a sufficient one.

*Fifth.* It was Charles W. Kerr upon whom the notice was not personally served, and for whose information the notice was published in the newspaper. It is said that the sheriff was negligent in attempting to discover the whereabouts of the said Charles W. Kerr and that his action in returning that after careful inquiry he was unable to ascertain the whereabouts or post office address of the said Charles W. Kerr was negligent, and upon this subject testimony was given. Margaret O'Donnell, a witness produced for the defendants, testified that she had lived in Muskegon for 36 years and had known the complainant for 20 years; that Charles W. Kerr was her son-in-law. She testified further that complainant came to see her in July, 1907, to learn where Charles W. Kerr was, and that she told him he was in Manistee; that he asked if he left any papers there and she replied, "No"; asked complainant if he wanted the address, and he replied in the negative; that at that time the said Kerr was living in Manistee; and that the witness had known where he had been during all the time from 1906 to the time of giving her testimony. Counsel call attention to the fact, but without stating that it appears in the record, that Polk's directory of Muskegon for the years 1906 and 1907 contains the item, "Kerr, Charles, Manager Variety Ironworks, residence 10 Fork street." It appears that the deputy sheriff, to whom the notice was given for service, who lived in the city of Muskegon and had for many years, and who made the return of service, or failure to serve, the notice in question, testified that on the same day that he received the notices he mailed one to the sheriff of Bay county to be served upon Charles W. Kerr there; that he was later directed to try Wayne county, and did try Detroit, and sent the notice to Detroit on July 12, 1907, for service; that it was returned from Detroit to the sheriff's office for Muskegon county; and

that finally, on August 15, 1907, he made the return that he was unable to find him. He testified also that he obtained the information that said Kerr was in Bay City, or might be there, from a family by the name of O'Donnell, living on Fork street, in Muskegon; that he got the information from some one at the O'Donnell house; that after the notice was returned from Detroit he made efforts to locate the said Kerr, but was unable to find him. Upon his cross-examination, the witness was unable to state whether he got the information from the O'Donnells in 1907 or in 1906; that he got information in such cases from different people, from the city directory, and the State Gazetteer. "We used to ask everybody we thought would know about people."

In *Williams* v. *Olson, supra,* something was said which is applicable here, as follows:

"Setting aside considerations growing out of the difficulties the sheriff would be likely to experience in discovering for himself the truth of the fact stated in the return, and the impropriety of certifying to a fact not within his knowledge, we are of opinion that a return reciting the fact may be shown to be false, and that actual proper service of the notice may be shown when the return does not recite the fact. The notice and return are in no sense jurisdictional. For this reason, the cases cited by counsel for complainant are not controlling. But the proper service of notice is a fact which must exist, and must, if questioned, be shown to exist, before the tax title holder is entitled to enter upon the land, to a writ of assistance, or to maintain ejectment. The absence of the fact is therefore also a fact which may be shown in a proceeding begun either by landowner or tax title owner, in affirmance or in avoidance of the tax title and of acts attempted in reliance upon it. It follows, necessarily, that it is open to complainant to question the asserted fact in a proceeding directly affecting the right of the defendants to have possession of the land in question."

So we might say in this case that it is open to the defendants to prove a false or fraudulent return. We are dealing, however, with official conduct and the testimony discloses, I think, a reasonable effort to discover the whereabouts of Charles W. Kerr.

It is not required that every possible source of information shall be examined by the officer who is seeking to learn the whereabouts of a landowner to whom a notice of this kind is addressed, and it is to be remarked of the testimony in this case that the complainant denies having the conversation testified to by Mrs. O'Donnell.

*Sixth.* The defendant William F. Kerr was served with a notice by registered mail, he being at the time in Cleveland. The evidence tends to prove that the registered letter was addressed to "Wm. F. Kerr, of Chisholm and Moore Fdy. Co., Cleveland, Ohio"; that the registry receipt returned by the postmaster at Cleveland bore the signature, "W. F. Kerr, per S. K. Wallace." William F. Kerr, to whom the letter was sent, and whose deposition appears in the record, testified that in June, 1907, he was at Cleveland, in July he was in Muskegon and different parts of Michigan for a period of three weeks, and was in Cleveland in August, and that he did not "receive any notice purporting to be signed by Jacob Heethuis, regarding a tax sale, or any notice signed by Jacob Heethuis, relating to any property"; that S. R. Wallace was head bookkeeper of the Chisholm & Moore Manufacturing Company, Cleveland, Ohio, and had never been authorized by him to sign for registered mail; and that the said Wallace did not deliver to him any registered mail "that he received July 1, 1907." Complainant, however, relies, in this respect, upon the answer of the defendants. Paragraph 2 of the bill of complaint charges that the sheriff served the notice upon William F. Kerr by depositing the notice in the United States

post office in the city of Muskegon in a sealed envelope, registered, with postage fully prepaid, plainly addressed to William F. Kerr, care of Chisholm & Moore Foundry Company, Cleveland, Ohio, and that a receipt for the letter, signed by the postmaster at Muskegon—

"and by each of the said persons, are annexed to said notice and were made a part of return of the said sheriff thereto, * * * which return and receipts are attached to a notice now on file with the register of this court and to which reference is hereby made."

Answering this, the appellants say, among other things:

"These defendants admit that a notice, signed by some person unknown to these defendants, but who was not the complainant, was served in relation to lot 1 of block 264 of the so-called revised plat of the city of Muskegon upon John F. Breden, the National Savings & Loan Association, and Wm. F. Kerr, as set forth in paragraph two of the bill of complaint."

The answer further sets up that, notwithstanding the return card from Cleveland, Ohio, showing service of a notice upon William F. Kerr, complainant did not take any trouble to inquire of said William F. Kerr the whereabouts of his brother, Charles W. Kerr, but refused to avail himself of this avenue of information. Chancery Rule 10, subdivision *d*, provides:

"Every answer shall contain an explicit admission or denial of each allegation in the bill of complaint as to which the defendant has knowledge or belief. But as to matters charged in the bill as to which the defendant avers he has no knowledge sufficient to form a belief, he shall not be required to admit or deny the same, but shall state his want of such knowledge. And every material allegation in the bill to which the defendant shall not make answer shall be taken as admitted by the defendant."

Complainant was warranted in relying upon the answer.

*Seventh.* Complainant asserts that the appellants have no standing in this case because the Kerrs interest which they claim to have acquired was entirely cut off by the Antha D. Keys tax titles which they failed to redeem from, and that if they claim any interest through Antha D. Keys, it will not avail them, because in the decree first entered in this cause it was adjudged that she was not in a position to question the proceedings by which the other defendants were claimed to have been bound, because she was not one of the class entitled to a notice to redeem. It appears that the said Keys gave to the Kerrs the statutory notice to redeem, and that more than six months elapsed, and that neither of the Kerrs attempted to redeem, and have begun no suit to set aside the Keys tax deeds, and are therefore barred from questioning the validity of the Keys title, which cut off their own title. The question presented upon this record is whether complainant should have a decree quieting his title or whether a decree should be made allowing appellants to redeem therefrom. As against the Keys title, complainant is entitled to a decree quieting his own title. If complainant's title is required to be reconveyed to appellants, it would, it is claimed, still appear that it was, in their hands, of no value, because cut off by the Keys title.

The first question necessary to be answered is whether, upon the whole record, complainant is shown to have perfected his title and right to the possession of the land by a performance of the condition upon which he took his deed from the auditor general. If he has, then he should have a decree quieting his title as against all those claiming an interest, to whom, or to whose grantors, he owed, under the tax law, any duty. It is an interesting, and, in a proper case, it may be an important and controlling question, whether persons who occupy the position which appellants

occupy in this case have any right to contest the entry of a decree in complainant's favor. But here the objections urged against complainant's right have been answered in his favor, and, without considering the equities, he is entitled to such a decree as was entered in the court below. Complainant will recover costs of this appeal.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.