# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 18, 2007

130810(73)(74)

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

In re Estate of JIHAD H. MOUKALLED,
Deceased.
_____/

BRUCE BAKIAN,
        Petitioner-Appellee,

v

NATIONAL CITY BANK, Personal
Representative of the Estate of JIHAD
H. MOUKALLED, Deceased,
        Respondent,

and

FIFTH THIRD BANK,
        Respondent-Appellant.
_____/

SC: 130810
COA: 257732
Oakland Probate:
 01-276297-DA

On order of the Chief Justice, a stipulation signed by counsel for the parties agreeing to the dismissal of this application for leave to appeal is considered, and the application for leave to appeal is DISMISSED with prejudice and without costs. Attorney Laurie S. Longo's motion to withdraw as counsel is GRANTED.

KELLY, J., concurs and states as follows:

I agree with the order dismissing the application for leave to appeal because the parties have stipulated to dismiss the case. I write separately to question the necessity or the desirability of Justice Corrigan's concurring statement.

First, I believe that the statement is unnecessary. The parties have agreed to dismiss the appeal, and therefore the issues involved are no longer before the Court. A bedrock of Michigan jurisprudence is that the Court reserves its judgment for "actual cases and controversies." See e.g., *Glass v Goeckel*, 473 Mich 667, 703 (2005). There is

no longer a case or controversy in the instant case, and therefore Justice Corrigan's statement questioning the reasoning of the Court of Appeals decision is unnecessary.

Second, Justice Corrigan questions whether the Court of Appeals expansion of equitable rights was proper. She espouses beliefs about and calls into question the appropriateness of a recognized legal doctrine when the validity of the doctrine is not before the Court. This does little more than indicate to future litigants that she is predisposed to questioning the applicability of the equitable lien doctrine in similar factual situations. In my view, this erodes the public's confidence in the impartiality of the judiciary by undermining the concept that cases are decided by a neutral and unbiased decision maker.

In response to this argument, Justice Corrigan asserts that her statement "merely articulates [her] view that the Court of Appeals legal analysis may be flawed." It would seem more appropriate to address that analysis when a case or controversy puts it before this Court. Justice Corrigan compares her statement to other statements that a justice might sign, such as an opinion or concurrence. But a significant difference exists between signing a legal opinion about an issue being adjudicated and opining on the applicability of one no longer before the Court. In the first situation, the justice is possibly creating binding precedent. In the second, the justice is stating personal beliefs that neither resolve the case nor bind other courts.

Most importantly, I believe Justice Corrigan's concurring statement is premature. This Court has not received the benefit of the parties' full briefing or oral arguments. Two possible conclusions may be deduced: Either Justice Corrigan's view on the subject is set and she will not consider further information, or she would consider further information and her position could change in a future case. If the former is true, she betrays an unwillingness to approach the issue again with an open mind. If the latter is true, her current exposition of views serves no useful purpose. It only confuses the reader.

For all the above reasons I have stated, I believe that Justice Corrigan's concurring statement sets an undesirable example. The parties have settled their dispute on their own and ask nothing more from this Court. Judges should encourage, rather than discourage, settlements. Justice Corrigan's statement implies that at least one of the parties was wrong in settling the dispute. As a result, it is likely that the party will question the decision to settle and hesitate to do so in another case. Also, future litigants may feel that the applicability of the equitable lien doctrine is in a state of flux.

For the reasons stated earlier, I concur with the order dismissing the application for leave to appeal but question the appropriateness of Justice Corrigan's concurring statement.

CORRIGAN, J., concurs and states as follows:

I concur with the order dismissing the application for leave to appeal because the parties agreed to the dismissal. But I write separately to question the Court of Appeals use of equity to create a lien where the "Security Agreement" does not meet the requirements of the relevant provision of article 9 of the Uniform Commercial Code (UCC), MCL 440.9104, or arguably meet the requirements of our recording statutes. I am raising this question because, although the Court of Appeals opinion is published and binding on trial courts and future Court of Appeals panels, the settlement of this appeal will preclude our consideration of the problematic Court of Appeals analysis. The lower courts and future litigants should be aware of the probable flaws in the Court of Appeals opinion.[1]

## I. Facts and Procedural Posture

Petitioner, Bruce Bakian, loaned Jihad Moukalled $381,000 in exchange for two promissory notes—one for $150,000 and another for $231,000. Moukalled failed to make all the agreed-upon payments for the loans. Rather than sue Moukalled, petitioner entered into an agreement with Moukalled (entitled the "Security Agreement"). Under the agreement, Moukalled promised not to file bankruptcy and promised to pay back the debts on time. If Moukalled did not make the agreed payments, he would be forced to liquidate his corporate and personal assets, including two vacant lots (the Heather Hills lots), to satisfy his debts to petitioner. Later that year, Moukalled killed his family and himself. Petitioner thereafter filed the Security Agreement with the Oakland County Register of Deeds. Approximately 18 creditors filed claims in excess of $2 million against the estate, but Moukalled's estate had only $312,023.36 in assets. Respondent,

---

[1] Justice Kelly argues that my statement is unnecessary because "this Court reserves its judgment for 'actual cases and controversies.'" But I do not pretend to pass judgment on this case. I write separately merely to heighten awareness that the binding Court of Appeals opinion reaches questionable legal conclusions.

I also reject Justice Kelly's argument that my statement is premature because "[t]his Court has not received the benefit of the parties' full briefing or oral arguments." It is common practice for members of this Court to express their legal views in a statement without having the benefit of full briefing and oral argument. In fact, Justice Kelly frequently engages in this practice herself. Justice Kelly's view would preclude members of this Court from commenting on any case in which we have not heard oral argument. This would severely limit our discretion to express our views on important legal issues. Furthermore, as discussed, I do not pretend to pass judgment on this case, but only question the Court of Appeals decision after careful consideration of the parties' applications, the lower court record, and the lower court decisions.

Fifth Third Bank, claimed $780,400.65 against the estate, while petitioner claimed $271,000 (the amount outstanding on the loans).

Petitioner moved to enforce the Security Agreement in probate court. The probate court ultimately held that the UCC applied and that the Security Agreement satisfied the requirements of a valid and enforceable security agreement under article 9 of the UCC.

The Court of Appeals affirmed for different reasons. 269 Mich App 708 (2006). The Court of Appeals held that the probate court erred in holding that the UCC applied to the creation or transfer of an interest in land. But the panel held that petitioner properly asserted an equitable lien on the Heather Hills lots. The panel held that the Security Agreement revealed that the parties intended to use identifiable pieces of property as security for the promissory notes, and that they had made a mutual mistake of law in preparing an agreement not enforceable under the UCC. The Court of Appeals concluded that because petitioner attempted to secure his loans to Moukalled and petitioner had no adequate remedy at law, petitioner sufficiently demonstrated that he was entitled to an equitable lien.

## II. Analysis

At the time the parties entered into the Security Agreement, article 9 applied only to transactions intended to create a security interest in *personal* property. Article 9 did not apply to "the creation or transfer of an interest in or lien on real estate . . . ." MCL 440.9104(j). Nonetheless, the Security Agreement purports to create a security interest in real property. The Court of Appeals allowed petitioner to circumvent the requirements of article 9 by using the equitable lien doctrine to enforce the Security Agreement.[2]

---

[2] The Court of Appeals also did not address whether the Security Agreement was subject to our recording statutes or whether the agreement satisfied the requirements of those statutes. The probate court, before it reversed itself on other grounds, held as follows:

> Petitioner first argues for a land contract mortgage. MCLA 565.358 states that "[a]ny document [that] would be sufficient to constitute a real estate mortgage upon interest in real property shall constitute a land contract mortgage." However, pursuant to MCLA 565.154 any mortgage of lands must be worded in the following[:] "A.B. mortgages and warrants to C.D." with a description of the property, sum granted, date of repayment, dated and signed. The document clearly does not meet these requirements because the document does not set a date for repayment nor does the document have a signature from Gerald Niester. Thus[,] the Petitioner's argument for a land contract mortgage must fail.

> Equity will create a lien only in those cases where the party entitled thereto has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled. . . .
>
> In order to lay the foundation for an equitable lien upon real estate, there must be a contract in writing out of which the equity springs, indicating an intention to make particular property identified in the written contract security for the debt or obligation, or whereby it is promised to assign, transfer or convey the property as security. [*Cheff v Haan*, 269 Mich 593, 598 (1934).]

A party that has an adequate remedy at law is not entitled to an equitable lien. *Yedinak v Yedinak*, 383 Mich 409, 415 (1970).

In reaching its decision that petitioner is entitled to equitable relief, the Court of Appeals failed to apply several arguably applicable legal principles. In *Senters v Ottawa Savings Bank*, *FSB*, 443 Mich 45 (1993), this Court explained that equity does not apply when a statute controls:

> "Courts of equity, . . . as well as law, must apply legislative enactments in accordance with the plain intent and language used by the legislature." Where . . . a statute is applicable to the circumstances and dictates the requirements for relief by one party, equity will not interfere. [*Id.* at 55-56, quoting *G S Sanborn Co v Alston*, 153 Mich 456, 461 (1908).]

This Court described the limits of the equitable lien doctrine in *Ashbaugh v Sinclair*, 300 Mich 673 (1942):

> "It is not a limitless remedy to be applied according to the measure of the conscience of the particular chancellor any more than, as an illustrious law writer said, to the measure of his foot. . . . In vain would a statute prescribe the limit of a curator's power to mortgage his ward's property if a court of equity should, by giving it another name, whether it be subrogation or equitable lien, invest an unauthorized deed with substantially the same effect it would have had if it had been expressly authorized by the statute." [*Id.* at 677, quoting *Capen v Garrison,* 193 Mo 335, 349-350 (1906).]

In *Jaenicke v Davidson*, 290 Mich 298, 304 (1939), this Court held:

---

In addition to the statute raised by the probate court, there is a question regarding whether the Security Agreement met the requirements of other recording statutes such as MCL 565.201.

"It is a well-settled principle of law that all contracts which are founded on an act prohibited by a statute under a penalty are void, although not expressly declared to be so." *In re Reidy's Estate*, 164 Mich. 167 [173 (1910)].

Neither law nor equity will enforce a contract made in violation of such a statute or one that is in violation of public policy.

Under these legal principles, I question whether it was proper for the Court of Appeals to use equity to enforce a security agreement that did not comply with article 9.

This Court's decision in *King v Welborn*, 83 Mich 195 (1890), deepens my concern regarding the Court of Appeals opinion. In *King, supra* at 196, the defendant argued that he had an equitable lien on a surplus of money remaining after foreclosure of a mortgage. But this Court rejected the defendant's argument because the applicable statute did not allow a verbal promise to give security to create a mortgage lien upon the homestead. *Id.* at 199. Similarly in the instant case, the statute does not permit an agreement to create a security interest in real property. Under *King, supra*, equity may not allow what the statute does not.

In conclusion, I question whether the Court of Appeals expansion of equitable rights was proper. If it was not, there is a danger that its opinion will be used to justify further impermissible expansions of equitable remedies. The opinion could have far-reaching negative consequences for the priority rights of secured and unsecured creditors. It disregards the priority rights of creditors who properly complied with the statutory requirements and gives an advantage to purported creditors who loan money outside the applicable legal conventions. The rights of creditors who have followed all the applicable rules and have done everything right will be subject to attack from would-be creditors who have failed to comply with the statutory requirements for creating a security interest. Had the parties not stipulated to dismiss the application for leave to appeal, I would have favored granting leave to appeal to determine whether the Court of Appeals use of the equitable lien doctrine was proper.[3]

---

Footnote 3 on next page.

_____

[3] I reject Justice Kelly's erroneous view that my statement questioning the Court of Appeals opinion indicates that I lack the ability to impartially decide future cases involving the equitable lien doctrine. "'[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Cain v Dep't of Corrections*, 451 Mich 470, 496 (1996), quoting *Liteky v United States*, 510 US 540, 555 (1994). My statement merely articulates my view that the Court of Appeals legal analysis may be flawed. It does not indicate that that I am somehow biased or partial toward the litigants. If anything, it merely reveals an insight into my judicial philosophy, which a reader can also glean from reading any of my opinions. Justice Kelly's view would essentially preclude appellate jurists from hearing the same issue in a later case. The system would collapse were this so.

I also reject Justice Kelly's argument that I should not comment on the Court of Appeals opinion because it might cause one of the parties to question its decision to settle and discourage that party from settling future cases. The parties have already settled this case. My statement no longer has the power to encourage or discourage the parties to settle this case. Because the facts of any future case will be different, I fail to see how my statement in this case will affect the party's willingness to settle future cases.

Justice Kelly also argues that my statement will create uncertainty regarding the applicability of the equitable lien doctrine. I agree. If the Court of Appeals opinion is incorrect, then the law should be uncertain. Future litigants *should* question the Court of Appeals opinion if it is flawed, rather than mindlessly accept the opinion just because it is legally binding. It is better for an area of the law to be uncertain than for it to be certain and wrong.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 18, 2007

_____
Clerk

d0515